636 A.2d 1260

**Stephen CHALMERS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 12, 1993.

Decided Jan. 7, 1994.

Michael N. Silver, for petitioner.

No appearance, for respondent.

Before COLINS and PELLEGRINI, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

Stephen Chalmers (Claimant) appeals the Workmen's Compensation Appeal Board's (Board) reversal of a referee's imposition of penalties against the City of Philadelphia (City) for unilaterally refusing to pay Claimant's necessary medical expenses caused by his work-related injury.

Claimant was employed as a City prison guard. On December 22, 1988, during a regular shift patrol, Claimant experienced a septal myocardial infarction (heart attack). In April 1989, he suffered a second heart attack and underwent coronary angioplasty to remove the ventricular blockage that resulted. Claimant filed a claim petition in May 1989 contending that his initial heart attack was work-related and that ventricular blockage resulting from that attack caused his second heart attack. The City answered, denying that either of Claimant's heart attacks were work-related.

Before the referee, Claimant presented the testimony of his treating physician, Dr. Marvin Schatz, board certified in internal medicine. Dr. Schatz testified that Claimant's first heart attack was brought on by his duties as a prison guard, and that the subsequent heart attack was caused by ventricular blockage resulting from that first attack. He stated that due to the significant damage to Claimant's heart incurred in the two attacks, Claimant would be a likely candidate for a heart transplant procedure. At the close of Claimant's evidence, the City conceded liability without presenting any evidence and agreed to pay benefits.

While the City only agreed to pay benefits from June 4, 1989,[1] the referee, however, by finding the testimony of Claimant's expert credible, determined Claimant to have been totally disabled since the date of the first heart attack, i.e., December 22, 1988, and ordered the City to pay compensation and medical expenses back to that date. The referee further found the City's contest of the claim to be unreasonable and ordered it to pay Claimant's litigation costs pursuant to Section 440 of the Act (Act).[2] The City did not appeal from this decision.

1. Claimant used his available sick leave benefits for the period from December 23, 1988, to June 4, 1989. Because sick leave benefits were part of Claimant's compensation package under his work agreement with the City, the referee held that the City could not credit this period against compensation payable and ordered retroactive payment to the date of injury.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996.

Claimant's coronary condition worsened and he was referred by Dr. Schatz to Dr. Susan Brozena and Dr. Jefferey Alpern, two cardiac transplant specialists at Temple University Hospital who recommended that he undergo a heart transplant. Claimant had a successful heart transplant on March 16, 1991, and was placed on anti-rejection medication. Following this procedure, Claimant submitted medical bills for the transplant procedure totalling $214,842.87 to the City. Claimant continued to purchase the anti-rejection drug costing $1,202.70 a month and sent receipts for the prescriptions to the City.

After six months had passed without either his medical bills from the transplant being paid or being reimbursed for his prescriptions, Claimant was informed that those expenses were not being paid because the City believed that the heart attacks were not work-related. Claimant filed a petition to review the unpaid medical expenses, as well as a petition seeking penalties against the City for non-payment of those expenses, alleging that the City had failed to pay medical expenses which they had been ordered to pay. However, the City did not file any petition challenging the expenses and merely denied the Claimant's assertion in its answer.

The referee accepted reports from the physicians who performed the heart transplant who asserted that Claimant's need for a heart transplant stemmed directly from tissue damage he suffered during his December 1988 and April 1989 heart attacks, and that following the transplant, Claimant would die without taking anti-rejection medication. Claimant also presented the testimony of Dr. Schatz, from the claim petition hearing, identifying Claimant as a candidate for heart transplant surgery. Rather than countering with testimony that the transplant was not necessitated by the work-related heart attacks, the City instead offered the report of Dr. Norman Makous, opining that Claimant's heart attacks were not work-related and, therefore, the need for a heart transplant was not due to Claimant's employment with the City.

■ The referee accepted Claimant's expert evidence and found the medical expenses submitted to be both reasonable and necessary. In addition to ordering the City to pay Claimant's medical expenses incurred in connection with his heart transplant, the referee also imposed a penalty of 10% of those expenses against the City pursuant to Section 435(d) of the Act [3] (penalty provision) for unilaterally refusing payment without first filing a petition challenging the reasonableness, necessity or its responsibility to pay those bills. The City appealed the imposition of penalties to the Board. The Board, holding that there is no violation of the Act when an employer refuses to pay medical bills based upon a dispute as to the causal relationship of those bills to the compensable injury, reversed the penalty award. Claimant's appeal followed.[4]

Claimant contends [5] that the Board erred in not affirming the penalty award because the sole basis for the City disputing causation was the report of Dr. Makous stating that Claimant's *heart attacks* were not work-related, which was an issue already decided in litigation. He also contends that if the City felt that his heart transplant was not necessitated by

3. Section 435(d) of the Act provides:
   The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
      (i) Employers and insurers may be penalized a sum not exceeding ten percentum of the amount awarded....
   77 P.S. § 991(d). In order to impose a penalty under this Section, an employer's violation of the Act or the regulations of the Department must appear on the record. *Spangler v. Workmen's Compensation Appeal Board (Ford)*, 145 Pa.Commonwealth Ct. 56, 602 A.2d 446 (1992).

4. Our scope of review is limited by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether the findings of fact are supported with substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

5. The City, having failed to submit a brief within the period established by order of this Court, has been subsequently precluded from submitting a brief.

this work-related heart attack, it should have filed a petition to review those bills before withholding payment.

■ Even though the work-relatedness of Claimant's heart attacks was conclusively established in the claim petition and admitted by the City, the City nevertheless based its non-payment of Claimant's medical expenses solely on its contention that those heart attacks were not work-related. Such a defense, however, is improper, because once it was determined that the heart attacks were work-related in the claim petition proceedings, the determination as to being work-related is final and not subject to collateral attack. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993).

Section 430(b) of the Act requires that employers comply with a referee's decision ordering compensation, providing:

> Any insurer or employer who terminates, decreases or refuses to make any payment provided for in the decision without filing a petition and being granted a supersedeas shall be subject to penalty as provided in section 435, except in the case of payments terminated as provided in section 434.

77 P.S. § 971(b). By refusing to pay Claimant's medical expenses based on an assertion that Claimant did not sustain a work-related injury, the City violated the obligation imposed upon it to comply with the referee's award. In *Gens v. Workmen's Compensation Appeal Board (Rehabilitation Hospital of Mechanicsburg)*, 158 Pa.Commonwealth Ct. 313, 631 A.2d 804 (1993), we reinstituted, without comment, a referee's imposition of a 10% penalty on an employer who merely attempted to prove the claimant's injury was not work-related during proceedings on the necessity and reasonableness of medical bills "due to its attempt, as the referee wrote, to appeal a matter which 'had already been decided by previous litigation'". *Id.* at 314, 631 A.2d at 805.

Accordingly, due to the City's violation of the Act, the referee's imposition of a penalty pursuant to Section 435(d)

was proper and the Board's decision reversing the penalty award is reversed.

## ORDER

AND NOW, this 7th day of January, 1994, the order of the Workmen's Compensation Appeal Board, No. A92–2237, dated May 10, 1993, is reversed.