**Giuseppe NOVERATI, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (NEWTOWN SQUIRE INN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 20, 1996.

Decided Dec. 12, 1996.

---

**456**

Lewis Kates, Philadelphia, for petitioner.

Lisa D. Eldridge, Philadelphia, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Giuseppe Noverati (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (WCAB) reversing the decision of a Workers' Compensation Judge (WCJ) and granting Newtown Squire Inn's (Employer) Petition to Suspend Claimant's benefits effective June 16, 1986. We reverse.

On April 2, 1979, while employed as a cook by Employer, Claimant injured his lower back when he lifted a heavy pot of soup. Claimant, who suffered from scoliosis, or curvature of the spine, filed a Claim Petition, alleging that the work injury aggravated that pre-existing condition and rendered him totally disabled. Employer contested the claim and, at hearings before Referee[1] Frederick Fiegenberg, presented the testimony of William Simon, M.D.. Based upon an August 7, 1981 examination of Claimant, Dr. Simon testified that Claimant's scoliosis was not causally related to, nor aggravated by, the alleged work injury, but, rather, that Claimant's condition was due to his ongoing pre-existing scoliosis and a non-work-related progressively degenerating back condition. (Referee Fiegenberg's Finding of Fact, No. 5; R.R. at 4a.) The Claim Petition was fully litigated before Referee Fiegenberg,[2] who, in February 1983, awarded Claimant benefits for his work-related disability. The WCAB affirmed.

In March of 1987, Employer filed a petition to suspend Claimant's benefits as of June 16, 1986 on the basis that "Claimant has returned to work in either a part-time or full-time capacity."[3] (R.R. at 6a.) Claimant filed an answer denying this allegation, and hearings were held before Referee Martin Burman.

In support of the suspension petition, Employer again submitted Dr. Simon's deposition testimony. Just as he had done previously in the Claim Petition proceeding, Dr. Simon testified that Claimant's back condition was due to his pre-existing scoliosis and non-work-related degenerative disc disease

---

1. Under the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, effective August 31, 1993, referees are now called Workers' Compensation Judges.

2. During the Claim Petition proceedings, Claimant testified on his own behalf and stated that he suffered continual back pain from the date of the work injury. In addition, Claimant presented the medical evidence of Raymond O. Stein, M.D., who testified that the work-related accident of April 2, 1979 aggravated Claimant's scoliosis so as to render him totally disabled thereafter. (Referee Fiegenberg's Findings of Fact, Nos. 4, 6; R.R. at 4a.)

3. We note that although Employer filed its suspension petition on the basis that Claimant had

returned to work, Employer never actually pursued this theory and, in fact, the record indicates that Claimant never returned to work following his 1979 work accident. However, Employer asserts that it later amended its petition, based upon Dr. Simon's September 25, 1990 evaluation of Claimant, to contend that Claimant's present physical ailments were unrelated to his April 1979 work injury. (Supplemental R.R. at 1a, 6a, 11a.)

We also note that, although clearly filed as a petition to suspend benefits, Employer's suspension petition is often referred to and treated as a termination petition, both by the WCAB and by Claimant. (*See e.g.,* R.R. at 141a, 143a, 145a, 169a–70a, 174a.)

and was not caused by Claimant's April 1979 work injury. Dr. Simon had examined Claimant two additional times since the Claim Petition proceeding, on May 5, 1987 [4] and again on September 25, 1990,[5] and testified that, through the course of all three examinations, he never changed his opinion regarding the non-work-related nature of Claimant's condition, both before and after 1979.[6]

In defending against Employer's suspension petition, Claimant presented the testimony of Dennis B. Zaslow, D.O. Dr. Zaslow testified that Claimant was incapable of doing any kind of work due to a herniated lumbar disk, chronic low back syndrome, chronic radiculopathy of the lumbar spine and scoliosis. (June 4, 1990 deposition of Dr. Zaslow at 14–15, 17–19, 35–36; R.R. at 86a–87a, 89a–91a, 107a–08a.) Dr. Zaslow also opined that Claimant's spinal problems were caused by his work-related accident. (June 4, 1990 deposition of Dr. Zaslow at 24–25, 39–41; R.R. at 96a–97a, 103a–04a, 111a–113a.)

Although Referee Burman found Dr. Simon more credible than Dr. Zaslow, he nevertheless denied Employer's suspension petition, concluding *inter alia:*

4. Employer deposed Dr. Simon on November 20, 1987, at which time, based upon the 1987 examination, he diagnosed Claimant as suffering from lumbar scoliosis, degenerative disk disease of the low back and bilateral spondylolysis, all of which, Dr. Simon indicated, are developmental abnormalities occurring at, or shortly after, birth and do not change. (November 20, 1987 deposition of Dr. Simon at 12; R.R. at 18a.)

5. Employer deposed Dr. Simon again February 26, 1991 with regard to this September 1990 examination. At that time, Dr. Simon diagnosed Claimant as suffering from severe degenerative joint disease and intervertebral disk disease in the low back. Additionally, Dr. Simon testified that, according to a recent CAT scan, Claimant also had lumbar stenosis by virtue of the degenerative changes he had undergone. (February 26, 1991 deposition of Dr. Simon at 12–13; R.R. at 39a–40a.)

6. Dr. Simon testified as follows:

Q. Now, based upon your three exams of [Claimant] and your review of his medical records, special studies, did you determine whether [Claimant] sustained any permanent injury on or about April 2, 1979, that would disable him today?

2. The testimony of Dr. Simon taken in its entirety and accepted as credible indicates that there has been no change in [C]laimant's condition since his first examination in 1981. In 1983 Referee Feigenberg [sic] found the [C]laimant's back condition was sufficiently disabling to award him benefits. Having failed to establish that [C]laimant's condition has medically changed in any way since that time the employer's petition in this case must be denied.

(Referee Burman's Conclusion of Law, No. 2; R.R. at 134a.)

Employer appealed to the WCAB, arguing that Referee Burman erred in denying the suspension petition when he clearly credited Dr. Simon's testimony that Claimant's condition never was related to his April 2, 1979 accident. (R.R. at 136a–37a.) The WCAB agreed that Dr. Simon's credible testimony did not support Referee Burman's decision; thus, the WCAB reversed and remanded the case so that Referee Burman could make new findings and conclusions based on the evidence presented. (WCAB op. of July 1, 1993; R.R. at 140a–44a.)

A. As you recall, I saw this man in 1981 and in 1987, so this was the third time I saw him. And each time I had seen him in reference to a presumed injury that occurred in 1979.

And each of the previous two times I had recorded that I could not find any specific objective residuum of that particular trauma based on my physical examination, my review of records, my review of his studies. There was no change in my opinion in 1990.

. . . .

Q. Do you have an opinion as to whether the condition about which you described [Claimant] suffers—the wear and tear, the narrowing of the spine—was exaserbated [sic], aggravated, or accelerated by the alleged trauma of April 2, 1979?

A. Well, the only thing I can tell you about that is that I initially saw this man two years after this alleged injury. And he had, as I reviewed at that time, a history of back and leg problems that had taken him back to the 1960's.

There wasn't anything after 1979 that really varied from what he had been suffering from before 1979. And there was no evidence from the records that he suffered any permanent injury in 1979.

(February 26, 1991 deposition of Dr. Simon at 13–15; R.R. at 40a–42a.)

On remand, WCJ[7] Burman made the following relevant findings:

2. On February 9, 1983 Referee Frederick Fiegenberg of the Philadelphia District granted a Claim Petition awarding benefits for temporary total disability to Claimant at the rate of $166.67 per week based on an average weekly wage of $250.00.

3. During the litigation of the Claim Petition, Defendant submitted medical testimony from William Simon, M.D., a Board certified orthopedic surgeon, who was of the opinion at that time that Claimant's condition was not work-related but was a progressively degenerative back condition. Notwithstanding this testimony, Referee Fiegenberg found Claimant's disability to be compensable and work related. This decision was affirmed on appeal by the Workers' Compensation Appeal Board [sic].

4. In support of this Petition, Defendant again submitted testimony of William Simon, M.D., a Board certified orthopedic surgeon, who in addition to his original examination saw Claimant on May 5, 1987 and again on September 25, 1990. Dr. Simon restated his opinion that Claimant's back problems stem from degenerative joint and disk disease and were not causally related to the April 1979 work injury. He further testified that Claimant's condition has not changed through the course of his three (3) examinations and as best he can determine it is the same as it was in 1979 and is certainly the same as it was in 1981 when he saw Claimant in preparation for his testimony in opposition to the Claim Petition. I find the testimony of Dr. Simon to be credible and the controlling testimony in the outcome of this case.

5. In opposition to this petition, Claimant presented the testimony of Dennis Zaslow, D.O., an orthopedic surgeon, who began treating Claimant on April 11, 1990 following the death of Claimant's prior treating physician, Raymond Stein, M.D. Dr. Zaslow was of the opinion that Claimant continued to be disabled as a result of his April 1979 injury. I find this portion of the doctor's testimony to be credible and not inconsistent with that of Dr. Simon.

6. Both medical experts agree that Claimant remains disabled from his pre-injury employment the only difference in their testimony being whether or not Claimant's disability is related to his work. The work relatedness of Claimant's disability has been determined in the prior Claim Petition and is not an appropriate subject of this litigation.

(WCJ Burman's Findings of Fact, Nos. 2–6; R.R. at 156a–57a.)

Based on these findings, WCJ Burman concluded that Dr. Simon's testimony in support of Employer's suspension petition did not differ significantly from the testimony he gave in the Claim Petition proceeding, testimony which Referee Fiegenberg rejected when he found that Claimant was entitled to benefits because of a back condition that was causally related to his April 1979 work injury. Relying on *Hebden v. Workmen's Compensation Appeal Board, (Bethenergy Mines, Inc.),* 534 Pa. 327, 632 A.2d 1302 (1993), WCJ Burman concluded that Employer was precluded under the theory of *res judicata* from relitigating the original medical diagnosis underlying Claimant's receipt of benefits; therefore, he dismissed Employer's suspension petition a second time.

■ Employer again appealed to the WCAB, arguing that, because *Hebden* dealt with a claimant's incurable *occupational disease,* WCJ Burman's reliance on that case here was unfounded. Moreover, Employer noted that WCJ Burman credited Dr. Simon's testimony that Claimant's continuing disability was not caused by the 1979 work incident and, therefore, argued that he should have granted the suspension petition. The WCAB agreed and reversed. In doing so, the WCAB determined that *Hebden* did not bar Employer from seeking a suspension of benefits based on medical evidence that the cause of Claimant's disability is due to non-work-related factors, and concluded that Employer had presented evidence sufficient to warrant suspension. Claimant now peti-

---

7. *See* footnote 1 of this opinion.

tions this court for review of the WCAB's determination.[8]

■ We agree with the WCJ that Employer could not relitigate the cause of Claimant's *original* disabling injury because its work-relatedness was finally resolved in the Claim Petition proceeding. *Chalmers v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 161 Pa.Cmwlth.285, 636 A.2d 1260 (1994), citing *Hebden*. However, we also agree with the WCAB that, in a non-occupational disease case, *Hebden* does not preclude an employer from seeking to terminate or suspend an employee's benefits based on medical evidence establishing that an employee's *current* disability is due to non-work-related factors.

Our supreme court expressly stated in *Hebden* that, once a claimant proves that he is disabled as a result of an *occupational disease,* neither the disability nor its cause may be relitigated because, despite modern medicine, occupational diseases are irreversible and progressive; thus, the claimant's medical condition and loss of earning power do not improve. Clearly, this reasoning is not applicable in a non-occupational disease scenario. As the court stated in *Hebden:*

> We do not lose sight of the fact that the Workmen's Compensation Act at section 413 (77 P.S. § 772) expressly provides that an award may be terminated based upon *changes* in the employee's disability. But that raises the logical question of whether an employee's disability is *changeable* in a given case. If it is, an employee's condition may be re-examined at a later time to see if he is still disabled or not. If it is not, an attempt to re-examine the employee's condition · is merely a disguised attempt to relitigate what has already been settled.

*Id.* at 331, 632 A.2d at 1304.

■ Claimant attempts to argue that, like the occupational disease in *Hebden,* his condition also is irreversible and that even Dr. Simon concedes this point. However, while we do not dispute that Claimant's pre-existing non-work-related scoliosis cannot be cured and only gets worse, it was the aggravation of that condition which constituted Claimant's disabling work-related injury. Because there is no indication that *this* injury was incapable of resolution, *Hebden* does not preclude a re-examination of Claimant's present disability.

■ In that regard, we recognize that an employer is entitled to terminate benefits if it demonstrates that the employee has fully recovered from his or her work-related injury and that any remaining disability is due to a pre-existing condition. *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Seybert),* 154 Pa.Cmwlth. 408, 623 A.2d 955, *appeal denied,* 535 Pa. 640, 631 A.2d 1011 (1993). Further, an employer is entitled to a suspension of benefits even without a showing of job availability [9] where it presents evidence, and the WCJ finds, that the claimant's *current* loss of earnings did not result from his continuing work-related injury, but from a pre-existing disease. *Id.* Indeed, Employer concedes that it has the burden of demonstrating that "since May 5, 1987 or September 25, 1990, at the latest[10] Claimant's alleged disability with regard to his lower back is *no longer related* to his April 2, 1979 work incident." (Employer's brief at 7) (emphasis added). What Employer cannot do, however, is establish grounds for termination or suspension

---

8. Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency law, 2 Pa.C.S. § 704; *Hastings v. Workmen's Compensation Appeal Board (Mastech Construction),* 667 A.2d 485 (Pa.Cmwlth.1995).

9. It is well established that a suspension is warranted where an employer can establish that a claimant's work-related disability has decreased to the point that he or she is capable of performing his pre-injury job or other work without loss of earnings and that such work is available. *Carpentertown Coal.* Here, Employer made no effort to show that there was any job available which Claimant could perform.

10. Here, the WCAB improperly determined that Claimant's benefits should be suspended as of June 16, 1986, a date prior to either of Dr. Simon's later medical evaluations of Claimant. However, because of our disposition here, we need not address the error further.

based on evidence that Claimant's disability is not now work-related because, in fact, it never was work-related. Because this is precisely what Employer attempts to establish through Dr. Simon's testimony, it cannot succeed here.

■ Dr. Simon rendered his opinion that Claimant's disability was not work-related in 1979 and that nothing occurred to change his mind about that causation in 1990. Thus, although, Dr. Simon testifies that Claimant's present disability is due to non-work-related factors, he bases that opinion on the belief that Claimant's disability was never causally related to the April 1979 work incident. As previously stated, the fact that Claimant's original disability was work-related was established in the Claim Petition proceeding and cannot be relitigated. *Chalmers.* Where an expert's opinion is based upon assumptions which are contrary to the established facts, the opinion is worthless.[11] *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa.Cmwlth.1996).

Because evidence that Claimant's condition was not work-related in the first instance, a matter previously adjudicated in the Claim Petition proceeding, will not suffice to satisfy Employer's burden of proof in its subsequent petition to terminate or suspend Claimant's benefits, the WCAB erred in reversing the WCJ's denial of Employer's suspension petition. Accordingly, we now reverse the order of the WCAB.

### ORDER

AND NOW, this 12th day of December, 1996, the order of the Workmen's Compensa-

tion Appeal Board, dated February 8, 1996, is hereby reversed.

McGINLEY, Judge, concurring.

I agree with the result reached by the majority. I write separately, however, because I disagree with the majority's assertion that *Hebden* is inapplicable to non-occupational disease cases.

Our Pennsylvania Supreme Court stated in *Hebden*:

> We acknowledge that the term 'res judicata' is a somewhat sloppy term and that it is sometimes used to cover both *res judicata* itself (claim preclusion) as well as collateral estoppel ('broad' *res judicata* or issue preclusion). Collateral estoppel, broad *res judicata* or issue preclusion 'forecloses relitigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.'

*Hebden*, at 330, 632 A.2d at 1304 (citing *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989)). In the workmen's compensation setting, the doctrine of *res judicata* has never been limited to non-occupational disease cases.

Here, there had already been a determination that Claimant suffered a compensable work-related injury. Whether claimant sustained such an injury was a critical issue of fact in the original award of benefits. In the present matter the keystone of Dr. Simon's opinion was his determination that Claimant's disability was *never* work related. Accordingly, Employer has attempted to relitigate an issue previously adjudicated. I

---

11. Here, in the initial proceeding, the referee found, and the WCAB affirmed, that Claimant sustained a compensable work-related injury. Because Employer did not appeal that finding, it is final. Section 418 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 833. However, in the present controversy, the testimony of Employer's medical expert was based on his belief that Claimant's disability was never work-related, which is contrary to the established facts of this case.

To be competent, Dr. Simon's opinion had to be based on the assumption that Claimant's original disability was causally related to his work accident in 1979. He would then have been able to testify regarding whether any changes had occurred which would lead him to believe that Claimant's current disability was due to non-work-related factors. That did not happen here.

would reverse based upon the doctrine of *res judicata* and *Hebden*.