**George HENRY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KEYSTONE FOUNDRY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 22, 2002.

Decided Feb. 4, 2003.

Richard T. Ruth, Erie, for petitioner.

Christian M. Stein, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

George Henry (Claimant) petitions for review from the July 31, 2002 order of the Workers' Compensation Appeal Board

(Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) granting the modification petition filed on behalf Keystone Foundry (Employer). We affirm.

On August 17, 1993, Claimant sustained a compensable injury when he attempted to jump across a three-foot hole from a catwalk, hit his head on a beam and fell on the back of his neck.[1] He continued to work until February 24, 1994, at which time he was taken off work. Employer issued a notice of compensation payable on March 21, 1994, awarding Claimant $382.65 based on an average weekly wage of $573.97. Claimant has not returned to work.

On February 23, 2000, Employer filed a petition to modify Claimant's benefits alleging that he was offered work on May 12, May 28, June 24, August 26, and November 15, 1999, within his medical restrictions. Claimant filed a timely answer denying the material allegations contained therein.

In addition to the aforementioned history, Claimant testified that he has blacked out approximately six times since his injury and that he continues to have pain in the left side of his head, neck, back, right side, arm and leg. He currently receives Social Security disability benefits and believes that he cannot return to heavy-duty work because he lacks strength in his arms. He has no hobbies and spends his days watching television, with the exception of driving his son to school.

In support of its petition to modify benefits, Employer presented the testimony of

J. William Bookwalter, a board-certified neurosurgeon.[2] Dr. Bookwalter performed an independent medical examination (IME) of Claimant on September 16, 1999. Upon examination, the doctor determined that Claimant's range of motion in his neck was as follows: forward flexion, 20 ; extension, 30 ; lateral flexion, 20 ; bilateral rotation, 20 . Although Claimant's gait was observed as slightly wobbly, Dr. Bookwalter believed that the wobble was contrived. Examination of Claimant's back yielded no spasms.

Dr. Bookwalter reviewed Claimant's diagnostic studies, noting that an April 19, 1999 MRI of Claimant's lumbar spine showed mild degenerative changes. An August 1999 cervical x-ray also showed mild degenerative changes and an August 1999 thoracic x-ray was negative. MRIs of Claimant's cervical, thoracic and lumbar regions performed on August 25, 1999 revealed some degenerative changes at the C6–7 level and L1–2, L2–3 and L3–4 levels. There was no evidence of root compression.

Dr. Bookwalter opined that Claimant suffered a mild concussion at the time of his work injury, as well as cervical and lumbar strains. However, he found no residual affects of Claimant's work injury and believed that there was no evidence that Claimant was suffering from any type of closed-head injury. The doctor determined that Claimant was capable of light-duty work with restrictions and he approved a position at the YMCA of Meadville. On cross-examination, Dr. Bookwalter stated that if Claimant had axonal shearing,[3] the best opportunity to observe

---

1. Claimant was a maintenance worker.

2. Employer also presented the deposition of David Babins, M.D. However, the WCJ noted that Dr. Babins evaluated Claimant from an orthopedic standpoint and did not consider Claimant's head injury. Consequently, the

WCJ did not make any credibility determinations regarding Dr. Babins' testimony. (F.F.7a-e)

3. Axonal shearing is a brain injury that occurs when the axons (the single-cell process that conducts impulses away from a cell body) of

it would have been very early after the injury.

In addition to the testimony of Dr. Bookwalter, Employer presented the testimony of Joyce Simyak, a vocational case manager with Concentra Managed Care. Ms. Simyak located the maintenance assistant position with the YMCA. The duties of a maintenance assistant included damp or dry mopping floors, vacuuming the floors, emptying trash cans, replacing trash bags, dusting furniture, cleaning restrooms and replenishing supplies. Ms. Simyak stated that the YMCA was willing to accommodate Claimant's restrictions and that the funded position was for an indefinite period.

In opposition to Employer's petition, Claimant introduced the deposition testimony of Joseph M. Thomas, M.D., a board-certified anesthesiologist. The doctor, who has treated Claimant on at least twenty occasions, diagnosed Claimant with cervical, thoracic and lumbar disc injuries. He stated that Claimant has central facial weakness, which is consistent with his earlier permanent brain injury. Dr. Thomas further stated that a diffuse axonal shearing would not be evident on a CT scan or MRI. On cross-examination, Dr. Thomas testified that Claimant's problems are more with repetitive activity and that he has problems with his right side. The doctor did not approve the YMCA position because he did not believe that it was light duty.

The WCJ concluded that Employer met its burden of proof for a modification of benefits in that Dr. Bookwalter, who was found to be more credible than Dr. Thomas, opined that Claimant was capable of performing the maintenance assistant position at the YMCA. Claimant's testimony

was found to be "not altogether credible." Accordingly, the WCJ modified Claimant's benefits to a weekly rate of $182.62 as of November 15, 1999, the date that the YMCA position was made available to Claimant.

In this appeal, Claimant contends (1) that the WCJ erred in failing to determine that Dr. Bookwalter's testimony was barred by the doctrine of res judicata, (2) that the WCJ erred in awarding an open-ended modification of benefits where the position offered to Claimant was funded and where the testimony does not support a finding that the position was indefinite and (3), that Employer's vocational expert was not approved by the Department of Labor and Industry (Department) as required by our decision in *Caso v. Workers' Compensation Appeal Board (Sch. Dist. of Philadelphia)*, 790 A.2d 1078 (Pa.Cmwlth.), *appeal granted*, 569 Pa. 710, 805 A.2d 526 (2002) and its progeny. We address Claimant's arguments *seriatim*.

On August 13, 1996, WCJ Alfred Benedict circulated a decision denying Employer's 1995 petition for a termination of benefits. In that determination, WCJ Benedict summarized the testimony of George M. Bohatiuk, Claimant's then-treating physician. Although lengthy, the salient portion of WCJ Benedict's finding of fact is as follows:

> [Dr. Bohatiuk] indicated that Dr. Matteliano [a physiatrist located in Buffalo, NY] diagnosed [Claimant] as *having sustained a closed head injury with residual weakness on the right side, which he attributed to the work related event of August 17, 1993.* Dr. Bohatiuk then reviewed a diagram of general brain structures and *indicated that he*

neurons are stretched and torn, producing cell death. *www.neuroskills.com/tbi/axonshear-*

*flash.shtml.*

*felt [Claimant's] injury occurred in the area of the brain stem,* at the level of the descending motor tracks.... He concluded that [Claimant] was disabled from performing *any industrial work,* and he recommended that [Claimant] be evaluated by yet another specialist, Dr. Duncombe, a neurologist.... [H]e stated that Dr. Duncombe's neurological exam was objectively normal, and that [Claimant] presented with a very difficult diagnostic dilemma, based on observations previously reviewed. Dr. Duncombe indicated that [Claimant] was subject to more than just a cervical nerve root injury, which Dr. Bohatiuk agreed with. *Dr. Bohatiuk again reiterated his belief that [Claimant's] injury was in the brain stem as opposed to the cortex....* Dr. Bohatiuk ... approved [Claimant] for light duty employment, but later determined that [Claimant] was totally disabled.... He indicated that his diagnosis as a result of the work injury was *closed trauma with axonal shearing involving the brain stem area and affecting primarily the descending motor tracks, those tracks being the ones that serve to function the right side of the body....* He stated that he believed [Claimant] was permanently disabled not only from the type of work he did before the injury, but any type of industrial work.

(R.R. 8a–9a)(emphasis added.) Although WCJ Benedict did not specify the type of injury sustained by Claimant, he found Dr. Bohatiuk's testimony to be credible. (*Id.* at 11a)

◼ No appeal was taken from WCJ Benedict's order. In this appeal, Claimant contends that the doctrine of res judicata bars Employer from asserting that Claimant did not suffer axonal shearing of the brain as a result of his work-related accident.

◼ The doctrine of res judicata provides that where there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited. *Myers v. Workers' Compensation Appeal Board (Univ. of Pennsylvania),* 782 A.2d 1108 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 688, 796 A.2d 319 (2002). Four factors must exist in order for res judicata to apply: identity in the thing being sued upon or for; identity of the cause of action; identity of the persons and parties to the action; and identity of the quality or capacity of the parties being sued. *Id.*

◼ While we agree that Employer cannot challenge the determination that Claimant suffered a closed-head injury, the ultimate issue in a petition filed pursuant to Section 413 of the Worker's Compensation Act (Act)[4] is the status of a claimant's condition at the time alleged in the petition. *C.D.G., Inc. v. Workers' Compensation Appeal Board (McAllister),* 702 A.2d 873 (Pa.Cmwlth.1997). A determination that the claimant's condition had not changed as of an earlier time does not preclude a subsequent attempt to demonstrate that the condition had changed as of a later time. *King v. Workmen's Compensation Appeal Board (K–Mart Corp.),* 549 Pa. 75, 700 A.2d 431 (1997).

Claimant contends that there was no evidence indicating that his brain injury was reversible. Liking his injury to an irreversible occupational disease, *see Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 534 Pa. 327, 632 A.2d 1302 (1993), Claimant maintains that Employer bore the burden of demonstrating that his injury was reversible.

**4.** Act of June 2, 1915, P.L. 726, *as amended,*  77 P.S. § 772.

■ Under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), an employer who seeks to modify a claimant's benefits on the basis that the claimant has recovered some or all of his ability must first produce medical evidence of a change in condition. To that extent, in *Noverati v. Workmen's Compensation Appeal Board (Newton Squire Inn)*, 686 A.2d 455, 459 (Pa.Cmwlth.1996), we stated that the Supreme Court's decision in *Hebden* "does not preclude an employer from seeking to terminate or suspend an employee's benefits based on medical evidence establishing that an employee's *current* disability is due to non-work-related factors" in non-occupational disease cases.

In summarizing Dr. Bohatiuk's testimony in 1996, WCJ Benedict did not state that the doctor found Claimant's injury to be permanent and irreversible. In fact, Dr. Bohatiuk at one time approved Claimant for light-duty work and only later determined that he was "permanently disabled not only from the type of *work he did before the injury, but any type of industrial work.*" (R.R. 8a–9a)(emphasis added) Consequently, WCJ did not find that Claimant's injury was irreversible or permanent.[5,6]

Thus, WCJ Benedict's 1996 determination that Employer failed to demonstrate that Claimant had fully recovered from his work injury as of February 28, 1995, does not preclude a subsequent petition averring that Claimant's medical condition has changed as of September 16, 1999 (the date of Dr. Bookwalter's IME) and that work was made available to Claimant within his medical restrictions as of November 15, 1999.[7]

■ In his second argument on appeal, Claimant maintains that the WCJ erred in modifying his benefits for an open-ended period where the position was funded and where the WCJ's finding that the position was available for an indefinite period of time is unsupported by the evidence. We disagree.[8]

Claimant cites *General Elec. Co. v. Workers' Compensation Appeal Board (Myers)*, 793 A.2d 191 (Pa.Cmwlth.), *appeal granted*, 569 Pa. 711, 805 A.2d 527 (2002), to argue that workers' compensation benefits cannot be modified indefinitely where the proffered position was funded. Claimant's reliance on *Myers*, however, is misplaced.

In *Myers* the WCJ found that the funded position was temporary and only available for ninety days. There was no assurance that the claimant would be hired at the expiration of the funded period. The

---

5. We note that both Drs. Bookwalter and Thomas testified that CT scans or MRIs taken of Claimant's brain at this point in time would not yield any indications of 1993 injury to the brain.

6. Only Dr. Thomas opined that Claimant's injury was permanent. However, the WCJ found Dr. Bookwalter's testimony to be credible and rejected Dr. Thomas' opinion.

7. Contrary to Claimant's assertion, Dr. Bookwalter did opine that if Claimant had in fact suffered an axonal shearing of the brain as a result of his work injury, said injury has resolved. (R.R. 28a–29a)

8. We note that the WCJ did not make a specific finding of fact that Claimant failed to follow up on the job referral as required by *Kachinski*. However, Claimant admitted that he did not pursue any of the job referrals from Employer and, in fact, Claimant's counsel informed Ms. Simyak that Claimant would not apply for the YMCA position. (R.R. 71a) Thus, although we believe that such a finding is required under *Kachinski*, there is no dispute that Claimant refused the position in bad faith. Hence, the WCJ's failure to make a finding was harmless.

employer's expert witness had testified that funded period was available anywhere from one week to three months and that the longest job ever subsidized was six months. On appeal, we concluded that the WCJ did not err in determining that the employer was entitled to a modification of benefits for only the typical subsidized period.

In the case *sub judice*, Ms. Simyak testified that the YMCA position was indefinite (R.R. 75a) and that in her experience, some subsidized positions were still ongoing three years later. (R.R. 80a) Thus, there was substantial evidence in the record to support the WCJ's finding that the proffered position was indefinite and that, therefore, Employer was entitled to an indefinite suspension of benefits.

In his final argument on appeal, Claimant contends that Employer's vocational expert was not approved by the Department as required by our decision in *Caso*. In that case, Judge Smith–Ribner determined that pursuant to Section 306(2) of the Act,[9] the Department not the WCJ, must approve vocational counselors before an employee can be required to submit to an earning power assessment interview.

In *Walker v. Workers' Compensation Appeal Board (Temple Univ. Hosp.)*, 792 A.2d 628 (Pa.Cmwlth.2002), we addressed whether Section 306(b)(2) of the Act applies to those injuries occurring prior to the June 24, 1996 amendments to the Act.[10] Noting that the Section 306(b)(2) amendment was procedural rather than substantive, we concluded that Section 306(b)(2) applied retroactively and that, therefore, the claimant could be required to submit to an interview conducted by an expert approved by the Department.

While *Caso* and *Walker* appear to be on point, those cases are distinguishable insomuch as the claimants in those cases objected to the interviews. In both cases, the claimants failed to appear for the vocational interviews and the employers sought to compel their attendance via the WCJ. Presently, Claimant did not object to the vocational interview prior to or during the interview. *Caso* and *Walker* hold that a claimant cannot be *compelled* to attend an expert interview unless the Department has approved the expert. Here, Claimant voluntarily attended the vocational interview and failed to challenge it before the WCJ. Therefore, any challenge based on *Caso* or *Walker* has been waived. Pa. R.A.P. 1551(a).

In view of the foregoing, this matter falls squarely within the Supreme Court's decision in *Kachinski*. Because Employer has meet its burden of demonstrating both a change in Claimant's medical condition and a referral to an open position within his restrictions, the burden shifted to Claimant to show that he followed through on the job referral in good faith. Inasmuch as Claimant failed to sustain his burden, Employer was entitled to a modification of benefits.

Accordingly, we affirm.

Judge FRIEDMAN concurs in the result only.

### ORDER

AND NOW, this 4th day of February, 2003, the July 31, 2002 order of the Workers' Compensation Appeal Board is AFFIRMED.

---

9. 77 P.S. § 512(2).

10. Act of June 24, 1996, P.L. 350.