**TEMPLE UNIVERSITY HOSPITAL,**
Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (SINNOTT),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2004.

Decided Jan. 14, 2005.

Audrey J. Copeland, Newtown Square, for petitioner.

Christina J. Barbieri, Philadelphia, for respondent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Temple University Hospital (Employer) petitions for review of the June 8, 2004, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) denying Employer's petition to terminate benefits payable to Jeffrey Sinnott (Claimant). We affirm the WCAB's order, as modified herein.

In 1993, Claimant filed a claim petition against Employer, alleging injuries resulting from exposure to radioactive materials at the workplace. In 1995, WCJ Martin Burman awarded Claimant total disability benefits, based on findings that Claimant's exposure to radioactive chemicals resulted in a cognitive dysfunction injury. In granting Claimant's claim petition, WCJ Burman expressly found that other conditions suffered by Claimant at that time, including obesity, diabetes and depression, were not causally related to Claimant's employment. (November 18, 1995, decision of WCJ Burman, R.R. at 126a–30a.) Claimant appealed, arguing that WCJ Burman erred in not finding that these other conditions were work related, and the WCAB affirmed.

On May 21, 2001, Employer filed a termination petition alleging that, as of August 24, 2000, Claimant did not have any cognitive, physical or emotional problems and had fully recovered from the work injury identified as "cognitive dysfunction." (R.R. at 1a–3a.) Claimant filed an answer denying these allegations, and the matter was assigned to WCJ A. Michael Snyder.

In support of its petition, Employer offered the deposition testimony of psychologist Steven Eric Samuel, Ph.D., who saw Claimant seven times between January 1998 and August 2000. Dr. Samuel described "cognitive dysfunction" as referring to difficulties in memory, attention, concentration and the ability to sustain a thought over a period of time. (R.R. at 53a.) Dr. Samuel testified that the results of neuropsychological testing performed on Claimant, including IQ testing, speech and language testing and a standardized memory test, indicated that Claimant has an average IQ, his memory is intact, his senses are intact and his speech and language skills are "in good shape." (R.R. at 59a.) Dr. Samuel also stated that his observations and interactions with Claimant were consistent with these test results. Dr. Samuel testified that he found no evidence of cognitive dysfunction in Claimant as of his last evaluation in August 2000, and he opined with a reasonable degree of psychological certainty that Claimant had fully recovered from his work injury as of that time. (R.R. at 63a.)

In opposition to Employer's petition, Claimant testified before the WCJ at hearings in February and July 2002. Claimant stated that he had been receiving treatment for the past four years at Friends Hospital, he presently was seeing Jack Gomberg, M.D., on a monthly basis and he

was taking Zyprexa (an anti-psychotic medication), Neurontin (for chronic pain and anxiety), Prozac and Zoloft. Claimant testified that his activities are severely limited by constant fatigue and paranoid delusions, he finds it difficult to be in crowds and he has difficulty concentrating. (WCJ's Findings of Fact, Nos. 1b-d; 2b.)

Claimant also presented the deposition testimony of Dr. Gomberg, who is board certified in psychiatry and neurology. Dr. Gomberg stated he first saw Claimant at Friends Hospital in May 2001, at which time Claimant was continuing a regimen of medications, including Zyprexa and Neurontin. Dr. Gomberg reviewed Claimant's treatment records, which reflected that Claimant had suffered from depression with chronic fatigue and paranoid ideations as well as delusions and that Dr. Gruener, Claimant's former treating psychiatrist, had diagnosed Claimant with an organic mood disorder. (R.R. at 73a–74a.)

Dr. Gomberg described Claimant's motor movements and speech as slow and hesitant and Claimant's memory and cognitive abilities as severely limited. (R.R. at 73a.) Dr. Gomberg testified that a mental status examination showed Claimant to be lethargic, anergic, passive and withdrawn in his demeanor. (R.R. at 75a.) He stated that Claimant's affect is blunted and depressed dysphoric mood and that Claimant generally sleeps eighteen hours a day and rarely leaves his house. (R.R. at 75a.)

According to Dr. Gomberg, Claimant manifested both long-term and short-term deficits. Dr. Gomberg testified that Claimant showed some confusion and was limited in his cognitive functioning. Dr. Gomberg stated that Claimant continues to experience lethargy, fatigue, poor memory and lack of motivation and there is a paranoid threat to some of his thinking. He testified that Claimant is oriented and

tries to keep up with the news, but has continuing problems with short-term memory. (R.R. 75a–77a.)

Based on his examinations, his review of tests and records and Claimant's medical and vocational history, Dr. Gomberg diagnosed Claimant with chemical induced persisting dementia. Dr. Gomberg also concurred with Dr. Gruener's opinion that Claimant suffers from organic mood disorder and psychiatric disturbance secondary to the chemical induced persisting dementia. Dr. Gomberg opined with a reasonable degree of psychiatric certainty that Claimant's exposure to chemicals "caused the cognitive dysfunction then and all the deterioration that has occurred since then." (R.R. at 80a–81a; WCJ's Findings of Fact, No. 2g.) When asked on cross-examination about the difference between his diagnosis of "chemical induced persisting dementia" and the "cognitive dysfunction" injury recognized by WCJ Burman in 1995, Dr. Gomberg explained that dementia is a cognitive dysfunction. (R.R. at 85a.) He described chemically induced persisting dementia as a condition that includes diminished IQ and memory capacity, an inability to concentrate and think abstractly and a constriction of mood. (R.R. at 80a.)

The WCJ found the testimony of Claimant and Dr. Gomberg to be credible and persuasive and accepted it as fact. (WCJ's Findings of Fact, Nos. 4–5.) The WCJ found Dr. Samuel's testimony to be credible but less persuasive than that of Dr. Gomberg. Citing Dr. Gomberg's certification in psychiatry and noting that he was Claimant's treating physician, the WCJ rejected Dr. Samuel's testimony to the extent it conflicted with Dr. Gomberg's opinions. (WCJ's Findings of Fact, No. 6.) Based on these credibility determinations, the WCJ concluded that Employer failed to meet its burden of proving Claimant

had fully recovered from his work injury and denied the termination petition. The WCAB affirmed the WCJ's decision, and Employer now appeals to this court.[1]

■ Citing *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa.Cmwlth.2001), and *Noverati v. Workmen's Compensation Appeal Board (Newtown Squire Inn)*, 686 A.2d 455 (Pa.Cmwlth.1996), Employer first argues that Dr. Gomberg's opinions are legally incompetent because his diagnoses of chemically induced persisting dementia, organic mood disorder and psychiatric disturbance do not address and/or contradict the description of the injury as found in the claim proceeding.[2] We disagree.

In his 1995 decision, WCJ Burman accepted the testimony of Claimant's medical witness that Claimant suffered "changes in his mental status" and that Claimant's "cognitive dysfunction" was caused by his exposure to chemicals at work. (R.R. at 128a, WCJ's Findings of Fact, No. 6.) During the subsequent termination proceeding, Dr. Gomberg explained that, "Dementia *is* a cognitive dysfunction. Cognitive dysfunction is not a diagnosis; it's a description." (R.R. at 85a) (emphasis added). When asked to explain his diagnosis of "chemically induced persisting dementia," Dr. Gomberg responded:

Well, that's pretty much what was documented previously, that as a result of his exposure to certain chemicals ... there was an effect on his brain functioning that caused deficits in his cognition. And cognition is not just measured by IQ functioning, which was also diminished according to Dr. Secetti, but also memory capacity, ability to attend, concentration. It can affect mood to some extent too, people who are cognitively impaired.

(R.R. at 80a.) We conclude that Dr. Gomberg's testimony adequately addressed the work injury as found by WCJ Burman in 1995, and we see no contradiction between

1. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

2. In *Wagman*, the employer issued a notice of compensation payable accepting liability for an exacerbation of pseudoarthrosis. In a subsequent termination proceeding, the employer's medical witness testified that the claimant sprained muscle ligaments in his back during the work injury and that this sprain had resolved. The medical witness acknowledged possible pseudoarthrosis, but he opined that it was of no consequence. The WCJ granted the employer's termination petition, but the WCAB reversed, concluding that the employer's medical witness failed to testify that the claimant was fully recovered from pseudoarthrosis, the injury acknowledged by the NCP.

In affirming the WCAB, the court in *Wagman* held that the testimony of a medical expert who does not believe that the injury acknowledged in the NCP ever occurred is not sufficient to support a termination of benefits. The court explained that sections 407 and 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 731, 771, prohibit parties from relitigating the nature of an accepted injury without first following the proper procedure, which is to file a review petition seeking to have the description of the injury changed.

Similarly, in *Noverati*, a WCJ awarded the claimant benefits based on a finding that a work-related accident caused an aggravation of the claimant's pre-existing scoliosis. In the course of a suspension proceeding, the employer presented evidence of a medical witness who restated the opinions he had expressed during the claim proceedings and testified that the claimant's disability was not, and never had been, work-related. Reversing the WCAB's decision, the court in *Noverati* held that, where an expert's opinion is based upon assumptions which are contrary to the established facts, the opinion is worthless.

Dr. Gomberg's diagnosis and the 1995 finding by WCJ Burman that Claimant's exposure to radioactive chemicals resulted in a cognitive dysfunction injury. Accordingly, we reject Employer's assertion that Dr. Gomberg's testimony is incompetent.

■ Employer also contends that the WCJ's finding that Claimant suffers from organic mood disorder and psychiatric disturbance as a result of the work injury conflicts with the 1995 adjudication identifying Claimant's work injury, and the doctrines of res judicata and/or collateral estoppel preclude Claimant from relitigating the nature of the injury as found by the WCJ in 1995.[3]

In *Green v. Workers' Compensation Appeal Board (Jefferson Health Services)*, 711 A.2d 575 (Pa.Cmwlth.1998), *appeal denied*, 557 Pa. 656, 734 A.2d 863 (1999), the employer filed a termination petition after the claimant had been granted a reinstatement of benefits. The claimant argued that the termination petition was barred by the principles of res judicata and/or collateral estoppel as a result of the reinstatement. In affirming the termination of benefits, the court in *Green* explained that the reinstatement petition was granted by the WCJ based upon Claimant's physical inability to perform her pre-injury work as of June 21, 1992, while the termination petition focused on whether Claimant fully recovered from the work injury as of September 6, 1994. The court emphasized that the critical date in the termination proceeding was in excess of two years after the reinstatement of the claimant's benefits. The court also stated:

> The prior decision of the [WCJ] to grant Claimant a reinstatement of benefits as

of June 21, 1992, was not challenged in the present proceeding. [The medical witness] did not re-examine Claimant until September 6, 1994, and did not address Claimant's physical condition during the time at issue in the reinstatement proceeding; instead, [the medical witness] confined her analysis to Claimant's physical condition as of his September 6, 1994, examination.

*Id.* at 577. The court concluded that the issues involved in the termination proceeding were different from the issues presented in the prior reinstatement proceeding and, therefore, the termination petition was not barred by either the doctrine of res judicata or collateral estoppel.

The same reasoning is applicable here. The issues raised in Employer's termination petition concern Claimant's condition as of August 24, 2000, and thus are different from the issues decided in 1995, which related to Claimant's condition as of January 16, 1992. Moreover, in addition to the distinction between the critical dates at issue, Dr. Gomberg's description of "organic mood disorder" reflects that this diagnosis is distinct from "depression":

> [I]t's a disorder of mood which has to do with feelings. And that can involve depression, it can involve mood swings, bipolar disorder, thing[s] like that. Organic means that the causal agent is something external or organic that affects the brain and, therefore affects the mood.

(R.R. at 81a.) The diagnosis of "organic mood disorder" includes mood swings and bipolar disorder and thus is not synonymous with the diagnosis of "depression" addressed in the prior proceeding.

---

**3.** Technical res judicata provides that, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded. *Maranc v. Workers' Compensation Appeal Board (Bienenfeld)*, 751 A.2d 1196 (2000). The principle of collateral estoppel acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment. *Id.*

Accordingly, because Employer's termination petition raises issues distinct from those decided in an earlier proceeding, including the nature of the diagnoses and the claimant's condition as of a particular date, the principles of res judicata and/or collateral estoppel do not apply.

 Employer next challenges the WCJ's authority to modify the 1995 description of the work injury to include organic mood disorder and psychiatric disturbance, where Claimant did not file a claim or review petition.[4] A claimant seeking benefits for disabilities that are related to, but distinct from, a recognized injury must file a claim petition. *Jeanes Hospital v. Workers' Compensation Appeal Board (Hass)*, 819 A.2d 131 (Pa. Cmwlth.), *appeal granted in part*, 574 Pa. 408, 831 A.2d 1159 (2003). The only exception to this general rule is where the claimant's disability arises as a natural consequence of the work-related injury. *Id.; Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth.1998). To the extent that Dr. Gomberg's testimony indicates that Claimant's organic mood disorder and/or psychiatric disturbance are natural consequences of the established work injury, Claimant would be permitted to amend the description of the work injury pursuant to section 413(a) of the Act,[5] rather than be required to file a claim

4. Although the WCJ did not expressly modify the prior decision, the WCJ's findings here, if unchallenged, would be binding on the parties in a subsequent proceeding. *See Volkswagon of America, Inc. v. Workers' Compensation Appeal Board (Bennett)*, 858 A.2d 151 (Pa.Cmwlth.2004). In *Volkswagon*, the claimant was receiving benefits for a 1988 back injury, when, in 1998, the employer filed a termination petition alleging that the claimant had fully recovered from the work injury. In defense of the claim petition, the claimant's doctor testified that the claimant continues to have back problems and also had left leg atrophy and an absent Achilles reflex that were causally related to the work injury. The WCJ credited this testimony and denied the *termination petition. The court's opinion* does not indicate that this decision was appealed.

Thereafter, the employer filed a second termination petition. In support of the subsequent petition, the employer's medical witness testified that the claimant had fully recovered from the back injury and that the left leg atrophy and absent Achilles reflex were due to non-work-related factors. The WCJ accepted this testimony and granted the second termination petition, but the WCAB reversed, holding that the findings in the second termination proceeding conflicted with the findings in the initial termination proceeding and thus were precluded by the doctrine of res judicata. In affirming the WCAB, the court in *Volkswagon* held that the cause of the claimant's leg atrophy and absent Achilles reflex had been judicially determined in the first termination proceeding and the employer could not relitigate that issue.

5. Section 413(a) of the Act provides:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

The second paragraph of section 413(a) provides in part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon

petition under section 315 of the Act, 77 P.S. 602.

However, because the WCJ did not find that the description of the NCP was materially incorrect at the time it was issued, 77 P.S. § 771, we agree with Employer that the WCJ erred in issuing findings that effectively modified Employer's liability as established by the 1995 award.[6]

In *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 728 A.2d 902 (1999), the employer issued an NCP accepting liability for physical injuries sustained by the claimant. The employer subsequently filed a termination petition, alleging that the claimant had fully recovered from the work injury. During hearings on this petition, the employer's medical witness testified that the main component of the claimant's problem was a psychiatric problem; because the witness had not treated the claimant prior to the work injury, he offered no opinion as to whether the psychological problem was causally related to the

work injury. The WCJ accepted this testimony as credible and denied the termination petition, concluding that, where the employer's expert raises the possibility that the claimant suffered from a psychological disability caused by the work injury, the expert's testimony is equivocal with regard to whether the claimant made a full and complete recovery. The WCAB affirmed, and this court affirmed the WCAB's decision.

On further appeal, our supreme court reversed. The court first observed that section 407 of the Act, 77 P.S. § 731, states that all NCPs shall be valid and binding unless modified or set aside as provided by the Act. The court then noted that section 413(a) of the Act, 77 P.S. §§ 771–772, provides for modification of an NCP upon proof that the original NCP was in any material respect incorrect at the time it was issued or upon proof that the claimant's disability has increased, pursuant to a petition filed by either party. The court

---

which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, That, except in the case of eye injuries, no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition.

77 P.S. § 772.

6. In workers' compensation law, the term "disability" is synonymous with loss of earning power. *Faulkner Cadillac v. Workers' Compensation Appeal Board (Tinari)*, 831 A.2d 1248 (Pa.Cmwlth.2003), *appeal denied*, — Pa. ——, 857 A.2d 680 (2004). Because a claimant's injury may not cause more than a total loss of a claimant's earning power, a claimant may not be more than totally disabled. *Id.* Therefore, Claimant, who presently is receiving total disability benefits, cannot

seek review under the second paragraph of section 413(a), 77 P.S. § 772.

In *Westinghouse Electric Corporation/CBS v. Workers' Compensation Appeal Board (Burger)*, 838 A.2d 831 (Pa.Cmwlth.2003), the claimant was receiving total disability benefits pursuant to an NCP and supplemental agreement, and he filed a review petition seeking to amend the NCP and supplemental agreement to include subsequent psychological injuries that arose from the original work injury. In affirming the WCJ's decision to amend the NCP and supplemental agreement, we held that the claimant "met his burden of proving that *his disabilities had increased* and that those *disabilities* were caused by the work related injury noted on the NCP," as required by section 413(a), 77 P.S. § 771. *Id.* at 837 (emphasis added). To the extent that our decision in *Westinghouse* implies that the term "disability" refers to a medical or psychological condition, as opposed to loss of earning power, we respectfully suggest that this decision be revisited.

in *Commercial Credit* held that, because the claimant never sought to modify the NCP to include compensation for his psychological injuries, the employer only needed to show that the claimant's physical injuries had resolved in order to succeed on its termination petition. The court stated that, for the same reason, "the lower tribunals erred by failing to confine their analysis of employer's termination petition to whether the injuries set forth in the original [NCP] had been resolved." *Id.* at 332, 728 A.2d at 905. The court elaborated as follows:

Although the conclusion that we reach today is plainly dictated by the relevant statutory provisions, we note also that sound considerations of policy militate heavily in favor of this conclusion. To impose a burden on an employer to "prove a negative" by establishing that the subsequently alleged injury bore no causal relationship to the work-related accident would be fundamentally unfair. Regardless of whether the employer had notice of the purported psychiatric injury at the time that the [NCP] was executed, and regardless of how much time elapsed before the psychiatric injury arguably manifested itself, the employer would have to prove the absence of any causal relationship between the psychiatric injury and the work-related accident. We will not strain the humanitarian goals underlying the Workmen's Compensation Act by holding that employees may remain perpetually eligible for compensation merely by alleging psychiatric injury at the eleventh hour and waiting to see whether the employer can adduce the requisite expert testimony to disprove a causal nexus.

*Id.* at 332–33, 728 A.2d at 905 (footnote omitted).

Recently, in *City of Philadelphia v. Workers' Compensation Appeal Board* *(Smith)*, 860 A.2d 215 (Pa.Cmwlth.2004), our court addressed a WCJ's authority to modify the injury as defined in an NCP during proceedings on an employer's termination and utilization review petitions. The employer had accepted liability for a "low back strain" and thereafter sought a termination of benefits on the basis that the claimant had fully recovered from this injury. Relying on the claimant's expert testimony, the WCJ denied the employer's petitions and redefined the claimant's injury to include post-traumatic lumbar radiculopathy and two herniated discs. The WCAB affirmed, but on appeal in *City of Philadelphia*, we reversed. We first held that the WCJ's decision did not satisfy the standard for a reasoned decision set forth in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003). We then held that the testimony of the claimant's experts concerning conditions that were not accepted by the employer in the NCP "was irrelevant" to the question of whether the claimant had recovered from the acknowledged work injury. *City of Philadelphia* 860 A.2d at 222. In so holding, we distinguished *Samson Paper Company v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221 (Pa.Cmwlth. 2003), which upheld the WCJ's modification of the acknowledged injury under section 413(a), 77 P.S. § 771, where the claimant proved that the NCP was materially incorrect at the time it was issued.

In accord with *Commercial Credit* and *City of Philadelphia*, we conclude that the WCJ erred in issuing findings concerning Claimant's organic mood disorder and psychiatric disturbance, which are irrelevant to the WCJ's determination as to whether Claimant fully recovered from the adjudicated work injury. Therefore, the WCAB erred in failing to vacate these findings. However, based upon Dr. Gomberg's competent testimony that Claimant continues

to suffer a cognitive dysfunction injury, the WCJ properly concluded that Employer failed to meet its burden of proof in this proceeding.

Accordingly, as modified, we affirm.

Judge SIMPSON concurs in the result only.

### ORDER

AND NOW, this 14th day of January, 2005, the order of the Workers' Compensation Appeal Board, dated June 8, 2004, is hereby affirmed as modified in accordance with the foregoing opinion.