700 A.2d 431

**Donna M. KING, Appellee,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(K–MART CORPORATION), Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided Sept. 19, 1997.

Patricia A. Mattern, Philadelphia, Gregory J. Davis, Ft. Washington, Dennis K. Barnes, Philadelphia, for K-Mart Corp.

Kenneth M. Rodgers, Philadelphia, for Donna King.

David S. Hawkins, Sudbury, Ontario, CN, for W.C.A.B.

Daniel K. Bricmont, Pittsburgh, for Amicus-P.T.A. Trial Lawyers.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

ZAPPALA, Justice.

This case involves an employer's petition to terminate workers' compensation benefits due to the claimant's complete recovery, where a previous petition based on the same grounds was denied. Commonwealth Court held that the second petition "must fail by reason of issue preclusion," because the employer failed to demonstrate that the claimant's

condition had changed after the denial of the first termination petition. *King v. Workmen's Compensation Appeal Board (K–Mart Corporation),* 664 A.2d 1087, 1091 (Pa.Cmwlth.1995). We reverse.

Donna King injured her back on January 16, 1980, while working for K–Mart Corporation. Pursuant to a Notice of Compensation Payable, K–Mart began paying benefits for total disability at the rate of $121.00 per week. In July of 1983, K–Mart filed a petition to terminate benefits, asserting that King was no longer disabled. In support of its petition, K–Mart presented the deposition testimony of Dr. John T. Williams, who had examined King on July 14, 1983, and was unable to find any cause or explanation for her complaints of pain. He offered the opinion that King was able to return to her normal work duties. King presented the deposition testimony of Dr. Ronald B. Greene, who had examined her on February 17, 1984. He described King's condition as chronic coccydynia[1] and opined that she was permanently disabled from working. In July of 1987, the referee denied the termination petition based on his finding that Greene's testimony was more persuasive than Williams's.

In February of 1990, K–Mart filed a second petition to terminate. In support of this petition, K–Mart presented the deposition of Dr. Marc Manzione, who had examined King on August 8, 1989, and found no objective physical basis for King's complaints of pain. King presented the deposition of Dr. Andrew Newman, who examined her on May 3, 1990, and the earlier deposition of Dr. Greene. King also testified herself, as did her husband.

On June 18, 1993, the termination petition was granted. The referee found Dr. Newman's testimony less credible than Dr. Manzione's, and therefore accepted Dr. Manzione's conclusions and rejected Dr. Newman's. He found that, "As of the date of Manzione's examination, Ms. King was fully recovered from her work-related injury. Any disability that she suffered from was the result of some other cause and not related to her

1. The coccyx is the end of the spinal column, colloquially referred to as the tailbone. Coccydynia refers to pain in the area around the coccyx.

work injury." The referee rejected King's argument that because of the result of the earlier petition K–Mart was barred by res judicata from bringing this petition.

On appeal, the Workmen's Compensation Appeal Board affirmed. The Board agreed with the referee that this termination petition was not barred by res judicata, and determined that there was substantial competent evidence, in the form of Dr. Manzione's testimony, to support the finding that King's disability from her work-related injury had ceased.

On further appeal, Commonwealth Court reversed. The court's opinion contained a review of the doctrine of *res judicata* derived from its decision in *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines)*, 142 Pa. Cmwlth.176, 597 A.2d 182 (1991). The court acknowledged that this Court had reversed the order in that case, 534 Pa. 327, 632 A.2d 1302 (1993), but explained that our decision, while agreeing with the discussion of res judicata, indicated that an employer, in proceedings to modify or terminate benefits, may not relitigate the original diagnosis. Unfortunately, the remainder of the Commonwealth Court opinion gave no indication of the reason for the citation to *Hebden* or the part it played in the analysis and decision of this case. It is thus unclear whether the court found our decision in *Hebden* controlling in this case, or whether the court was merely reiterating the language of its own decision in *Hebden* with respect to the doctrine of res judicata, finding our decision inapplicable but discussing it simply as the later history of the cited case. We find our *Hebden* decision entirely inapplicable.

The claimant in *Hebden* was awarded workers' compensation benefits by a referee upon a finding that he had coal worker's pneumoconiosis. The employer later sought modification. In the course of explaining their opinion that the claimant was not disabled, the employer's medical experts testified that the claimant had bronchial asthma, not pneumoconiosis. One of these doctors conceded on cross-examination that if the claimant did not have pneumoconiosis at the time the doctor examined the claimant, he would not have had it

previously. This coincided with the claimant's physician's testimony that pneumoconiosis is irreversible.

Nevertheless, the referee accepted the employer's experts' testimony that the claimant did not have pneumoconiosis and terminated benefits, a decision that was affirmed by the Board and the Commonwealth Court. In reversing, we determined that the unrefuted testimony that pneumoconiosis is irreversible precluded the employer from asserting and the referee from finding that the claimant did not have the disease.

Here, despite Dr. Greene's testimony in the first proceeding that characterized King's injury as "permanent," and Dr. Newman's testimony in the second proceeding that in his own experience he had never had a coccydynia patient get better, there is no basis in this record for characterizing coccydynia as irreversible. The testimony of Dr. Manzione suggested that coccydynia "generally responds to conservative treatment" that protects the area of the coccyx from direct pressure, and that injections and surgery may be employed to relieve the pain. Thus at the very least, K–Mart produced evidence that the condition King had been diagnosed with was changeable.

K–Mart did not argue and its witness did not suggest that King never suffered a work-related back injury. With respect to both the first and second termination petitions, K–Mart argued only that King was no longer disabled on account of that injury. Nor did K–Mart in the second termination proceeding either explicitly or implicitly challenge the referee's conclusion in the first proceeding that King was still disabled in 1983.

Plainly, our decision in *Hebden* has no bearing on the analysis of this case. Indeed, our opinion in that case recognized that

the Workmen's Compensation Act at Section 413 (77 P.S. § 772) expressly provides that an award may be terminated based upon *changes* in the employee's disability. But that raises the logical question of whether an employee's disability is *changeable* in a given case. *If it is, an employee's*

*condition may be re-examined at a later time to see if he is still disabled or not.* If it is not, an attempt to re-examine the employee's condition is merely a disguised attempt to relitigate what has already been settled. We think the latter is what occurred here.

534 Pa. at 331, 632 A.2d at 1304. (First two emphases in original, latter emphasis added). In contrast, the former is what occurred in this case.

■ Entirely apart from the confusing references to *Hebden*, the Commonwealth Court's opinion here can be read to suggest that where an employer has been unsuccessful once in demonstrating a change in the claimant's condition, its burden in a later proceeding is not merely to show that the disability has changed or ceased. Rather, the employer must show that the claimant's condition changed after the earlier proceeding. Such is not the case.

Commonwealth Court observed that, "Like Dr. Williams, Dr. Manzione also opined that Claimant is no longer disabled and that he could find no explanations for her complaints of pain." The court then noted that on cross-examination Dr. Manzione "admitted" that King's medical condition remained unchanged from the time the first termination petition was filed. 664 A.2d at 1090.[2] The court presented in detail the referee's findings with regard to the first petition, then re-

2. Commonwealth Court supported this conclusion by reference to a portion of Dr. Manzione's deposition where the following exchange occurred:

Q: [by the claimant's attorney] . . . is it your opinion that there was a change in her medical condition from July 1983 [when the first termination petition was filed] until you saw her August 8, 1989 . . . ?
A: According to this report the patient was having the same complaints then as when I saw her in 1989. So, in that sense I don't think much has changed.

The court did not note that counsel prefaced the question by directing Dr. Manzione's attention to Dr. Williams's report from July of 1983, or that K–Mart's counsel objected to the question for this very reason.

More importantly, the court seems to have ignored the qualification that Dr. Manzione placed on his answer, i.e., that not much had changed *in the sense that* King had the same complaints of pain in 1989 as she had in 1983. Dr. Manzione's testimony when viewed in its entirety offered no opinion as to King's medical condition in 1983 or at any time other than when he examined her.

peated that K–Mart's witness "stated that there was no change in Claimant's condition since the initial termination petition was filed." *Id.* Finally, the court held that the second termination petition failed due to issue preclusion, once again observing that "Employer failed to demonstrate any change in Claimant's condition after the . . . dismissal of the initial termination petition by the referee." *Id.* at 1091.

Section 413 of the Workers' Compensation Act, 77 P.S. § 772, provides that a referee

> may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award . . . upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased. . . . Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased. . . .

██ We can find no reason that the nature of the proof in a second or later termination proceeding should differ from that in a first proceeding. The issue in each instance is whether the claimant's disability had changed or ceased as of the time specified in that proceeding. Of necessity, an employer's second termination petition will involve evidence similar to that presented in the first for in each case the employer believes it has marshalled sufficient proof, generally in the form of medical opinion, that the claimant's disability has ceased. A decision that the claimant's condition had not changed as of an earlier time should have no effect on a later attempt to demonstrate that the condition has changed as of a later time.

██ In this case, the referee observed King during her testimony, reviewed the deposition testimony of Drs. Manzione, Newman, and Greene, and determined that King's disability had ceased as of the time Dr. Manzione examined her in 1989. Because his conclusion is supported by substantial evidence in the record, the Commonwealth Court erred in

reversing. Accordingly, the order of the Commonwealth Court is reversed and the order of the Workmen's Compensation Appeal Board is reinstated.

NEWMAN, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a Concurring Opinion in which CASTILLE, J., joins.

CAPPY, Justice, concurring.

I concur in the result reached by the Majority. I write separately to emphasize that, contrary to the Majority's assertions, the Workers' Compensation Act (the "Act") requires that a party seeking to alter benefits, based upon a change in physical disability, must prove that there has been a change in physical condition since the last legal proceeding addressing the nature and extent of the injury. I concur with the Majority because in this case, I believe that this requirement has been satisfied. Further, I write to suggest that the timing of repeat termination petitions should be of critical importance to a determination of whether a party seeking the termination of benefits is proceeding in good faith, and, thus, whether benefits should be terminated.

Prior case law has consistently interpreted the Act as requiring evidence of a change in condition from an earlier determination and sets forth compelling reasons for such a requirement. This court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987) made clear that an employer who seeks to modify a claimant's benefits "on the basis that he has recovered some *or all* of his ability must first produce medical evidence of a change in condition." (Emphasis supplied). This burden of production requires evidence of a change in condition since the last disability determination. *See Cerny v. Schrader & Seyfried*, 463 Pa. 20, 342 A.2d 384 (1975); *Mancini v. Workmens Compensation Appeal Board*, 64 Pa.Cmwlth. 484, 440 A.2d 1275 (1982); *Airco–Speer Electronics v. Workmen's Compensation Appeal Board*, 17 Pa.Cmwlth. 539, 333

A.2d 508 (1975); *Banks v. Workmen's Compensation Appeal Board*, 15 Pa.Cmwlth. 373, 327 A.2d 404 (1974); *E.R. Reed Contractor Co. v. Workmen's Compensation Appeal Board*, 7 Pa.Cmwlth. 580, 300 A.2d 847 (1973).

The reason for such a requirement is perhaps best stated by the learned Judge Glenn E. Mencer in *Banks v. Workmen's Compensation Appeal Board*, 15 Pa.Cmwlth. at 377, 327 A.2d at 406, "[a]bsent the requirement of showing a change in disability, a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a referee by filing petitions for modification based on the same evidence as infinitum, in the hope that one referee would finally decide in his favor."

In the case *sub justice* K-Mart offered a change in condition since the 1983 termination petition proceedings by presenting expert medical testimony of the 1989 examination of Ms. King and the expert's conclusion that Ms. King's subjective complaints of pain, at the time of the second examination, were unfounded. Thus, the Act's requirement of proving a change in condition since the last determination regarding the extent of the claimant's injury was met.

Further, I believe that consideration of the timing of the filing of repeat termination petitions is critical to protect a party from vexatious litigation. While the Act allows a party to seek modification of benefits based upon a change in physical condition at any time, this court noted in *Kachinski* that, "the viability of this system depends on the good faith of the participants." *Kachinski*, 516 Pa. at 252, 532 A.2d at 380. Penalty provisions of the Act, such as section 440, 77 P.S. § 996, which allow for the assessment of attorneys fees and costs against an insurer which contests, without a reasonable basis, a compensation claim, are consistent with requiring parties to proceed in good faith. More specifically, prior case law has focused on the time between the filing of petitions as indicia of whether a claim for modification was brought in good faith. *Cf Airco–Speer; Banks.*

I suggest that a determination of whether a party is proceeding in good faith, and, thus, whether benefits should be terminated, must include as a primary element of consideration, the timing of the filing of repeat termination petitions. I submit that a reasonable period of time must pass between the filing of termination petitions. While what constitutes a "reasonable" period of time will differ with the facts and circumstances of each case, I believe that only in rare cases should a petition to terminate benefits, which is filed within the same year as a previous petition, lead to a termination of a claimant's benefits. This respite would help to prevent vexatious litigation, promote judicial economy, and establish respect for judicial judgments, thus, ensuring the "viability of the system." *Kachinski.*

In this case K-Mart satisfied its burden of establishing a change in condition since the latest legal proceeding addressing Ms. King's physical disability and filed its second termination petition after a reasonable period of time; therefore, I concur in the result reached by the Majority.

CASTILLE, J., joins in this Concurring Opinion.