Valerie MYERS, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (University of Penn-
sylvania and Alexsis, Inc.), Respon-
dents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 13, 2001.
Decided Aug. 23, 2001.
Reargument Denied Oct. 29, 2001.

Eric S. Borjeson, Philadelphia, for peti-
tioner.

Patricia S. Duffey, Exton, for respon-
dent.

Before SMITH and KELLEY, Judges,
JIULIANTE, Senior Judge.

SMITH, Judge.

Valerie Myers (Myers) petitions this
Court for review of an order of the Work-
ers' Compensation Appeal Board (Board)

that granted the University of Pennsylvania's (Employer) petition to terminate Myers' workers' compensation benefits. Myers presents one question on appeal: whether the Board and the Workers' Compensation Judge (WCJ) erred by concluding that Employer's medical evidence was sufficient to satisfy its burden of proof, when Employer impermissibly relitigated issues concerning Myers' permanent right wrist injury.

Myers worked as a mail clerk for Employer. Her responsibilities included handling, sorting and lifting packages, books, equipment, office supplies, computers and mail sacks. On January 15, 1992, Myers was pushing a book cart when she injured her right wrist. Employer referred Myers to Dr. John Bednar, a physician board certified in orthopedic surgery. Myers underwent an MRI of the right wrist on February 20, 1992, which indicated that Myers had a ganglion cyst but was negative for a ligament tear. Dr. Bednar diagnosed Myers' condition as a scapholunate ligament injury of the right hand. On February 25, 1992, Myers was involved in a non-work-related motor vehicle accident. She suffered injuries to her left side, including a fractured humerus and injury to her shoulder and back.

On March 3, 1992, Employer issued its notice of compensation payable (NCP) for Myers' work-related injury to her right wrist. The NCP set forth a weekly compensation rate of $288.85 based on an average weekly wage of $433.27. Employer filed its first termination petition in January of 1997, alleging that Myers had fully recovered from her work-related injury. The WCJ denied Employer's petition on October 3, 1997, based upon Dr. Bednar's deposition testimony that Myers' ganglion cyst had resolved but that she still suffered a scapholunate ligament injury to the right wrist from which she remained un-able to return to the mail clerk position with Employer. Myers testified by deposition concerning her condition.

Dr. Scott Jaeger, board certified in orthopedic surgery, examined Myers on behalf of Employer on November 17, 1997. Dr. Jaeger opined that Myers had totally recovered from her work-related injury, but she still experienced physical problems as a result of the motor vehicle accident. Based on Dr. Jaeger's opinion, Employer filed a second termination petition in May 1998 asserting that Myers had fully recovered from her work-related injury as of November 17, 1997. Dr. Bednar testified by deposition. He stated that based on his examination of Myers on June 18, 1998, it was his opinion that her scapholunate ligament injury had healed. He also agreed with Dr. Jaeger that Myers had upper extremity problems related to the motor vehicle accident.

The WCJ found the testimony and opinion of Dr. Jaeger more persuasive than that of Dr. Bednar. In addition, the WCJ noted that Dr. Bednar had testified that Myers no longer had an active diagnosis regarding the scapholunate ligament injury. The WCJ rejected Myers' testimony that she still had difficulty using her right hand as unpersuasive and inconsistent with Dr. Jaeger's physical findings. Based on the evidence presented at the second hearing, the WCJ found that Myers was fully recovered from her work-related injury and that any remaining disability was related to the motor vehicle accident. Myers appealed to the Board, arguing that based on res judicata principles the WCJ erred in granting a termination of her benefits. The Board affirmed the decision of the WCJ, concluding that medical evidence presented in the prior litigation regarding Myers' scapholunate ligament injury did not preclude Employer from showing in

the present litigation that Myers' work injury had ceased.

■ Myers argues before this Court that the WCJ's decision is contrary to facts determined in the prior litigation and is not supported by substantial competent evidence.[1] Myers also argues that the doctrine of res judicata bars Employer from relitigating the fact that she sustained a scapholunate ligament injury, which had not resolved when Employer's first petition for termination was presented to the WCJ. Myers contends that the facts which cannot be litigated in this proceeding are that her ligament was partially torn, the ligament healed in a lengthened position, there is an increase in space between the scaphoid and lunate bones and that the October 1994 x-ray confirmed her lengthened ligament and increase in space between her wrist bones. She further contends that her lengthened ligament and bone laxity was the basis for the WCJ's denial of Employer's first petition and that Employer may not relitigate the nature of that injury in the current termination proceeding.[2] Myers cites *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993), *King v. Workmen's Compensation Appeal Board (K–Mart Corp.)*, 549 Pa. 75, 700 A.2d 431 (1997), and *Noverati v. Workmen's Compensation Appeal Board (Newtown Squire Inn)*, 686 A.2d 455 (Pa.Cmwlth.1996).

■ When an employer seeks to terminate benefits in a second termination proceeding, having been unsuccessful in the initial termination proceeding, the employer's burden is to show that the claimant's disability has changed or has ceased. *King*. In *Hebden* the Pennsylvania Supreme Court held that an employer cannot relitigate the issue of a claimant's disability when the condition is irreversible, such as a progressive occupational disease. Myers, however, did not suffer a progressive occupational disease. In *King* the Supreme Court reasoned:

> We can find no reason that the nature of the proof in a second or later termination proceeding should differ from that in a first proceeding. The issue in each instance is whether the claimant's disability had changed or ceased as of the time specified in that proceeding. Of necessity, an employer's second termination petition will involve evidence similar to that presented in the first for in each case the employer believes it has marshalled sufficient proof, generally in the form of medical opinion, that the claimant's disability has ceased. A decision that the claimant's condition had not changed as of an earlier time should have no effect on a later attempt to demonstrate that the condition has changed as of a later time.

*King*, 549 Pa. at 81, 700 A.2d at 435. In *Noverati* the Court agreed that the em-

---

1. This Court's review is limited to determining whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

2. In *Maranc v. Workers' Compensation Appeal Board (Bienenfeld)*, 751 A.2d 1196 (Pa. Cmwlth.2000), the Court explained that the doctrine of res judicata includes two separate principles: technical res judicata and collateral estoppel. Technical res judicata provides

that when there is a final judgment on the merits, future litigation between the parties on the same cause of action is prohibited. *Id.* Four factors must exist to apply technical res judicata: identity in the thing being sued upon or for; identity of the cause of action; identity of the persons and parties to the action; and identity of the quality or capacity of the parties suing or being sued. *Id.* Collateral estoppel precludes future litigation of issues of law or fact, which were litigated and necessary to a prior final judgment. *Id.*

ployer could not relitigate the cause of the claimant's original injury. However, the Court also indicated that in a non-occupational disease case an employer may seek to terminate or suspend a claimant's benefits based on medical evidence establishing that the claimant's current disability is due to non-work-related factors.

Myers has cited no other authority to support her argument that *Hebden, King* or *Noverati* should be interpreted to preclude an employer from filing a second petition to terminate benefits based on a change in or a cessation of a claimant's work-related injury. Drs. Bednar and Jaeger concurred that Myers' work-related injuries ceased to exist as of the dates they separately examined her after the initial hearing on Employer's first termination petition. Thus principles of res judicata do not preclude Employer's second petition. The WCJ, therefore, did not err in allowing Employer to present its medical evidence that Myers has fully recovered from her work-related injury even though Employer did not prevail in its first petition. Accordingly, because the WCJ's findings were based upon substantial evidence of record, the Court finds that the Board did not err in affirming the WCJ's decision. The Court therefore affirms the order of the Board.

### *ORDER*

AND NOW, this 23rd day of August, 2001, the order of the Workers' Compensation Appeal Board is affirmed.