IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Bark, : 
           Petitioner : 
            : 
      v. : No. 540 C.D. 2021
            : Submitted: October 22, 2021
Sooner Steel, LLC (Workers' : 
Compensation Appeal Board), : 
           Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE CEISLER                              FILED: March 21, 2022

John Bark (Claimant) petitions this Court for review of the May 6, 2021 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ) that denied Claimant benefits under the Workers' Compensation Act (Act)[1] because Claimant's injuries from a March 5, 2018 motor vehicle accident (MVA) did not arise in the course and scope of his employment. After review, we reverse the Board and remand for further proceedings.

## I. Background

Claimant worked approximately four years as a seasonal laborer for Sooner Steel, LLC (Employer), installing rebar for in-ground swimming pools. Certified Record (C.R.), Item No. 15, Claimant deposition (dep.), 7/9/18 at 7. Christopher

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Williams (Williams) is Employer's sole owner.[2]  C.R., Item No. 19, Williams dep. at 9.  On April 20, 2018, Claimant filed a claim petition seeking total disability benefits under the Act for injuries he sustained in a March 5, 2018 MVA that occurred when Claimant returned home from Employer's job site in Rio Grande, New Jersey (New Jersey Job Site).  C.R., Item No. 2, Williams dep. at 10.  While Employer denied that Claimant's injuries from the March 5, 2018 MVA were work-related,[3] the parties executed a joint stipulation of facts in which they agreed that his injuries consisted of the following:

1. left temporal lobe brain contusion;

2. atelectasis and contusion of the right lung;

3. nasal septum fracture;

4. non-displaced fracture of the lumbar transverse process;

5. open dislocation of left elbow with nerve and tendon injury, requiring external fixator repair, with axonal radial nerve disruption distal to the triceps innervation; and

6. neuropraxic injury to median nerve in forearm.

C.R., Item No. 26, Joint Stipulation, ¶ 6.

The joint stipulation also provided that, should Claimant succeed on his claim petition, the agreed-upon injuries were compensable under the Act, and that Claimant would receive total disability benefits from March 6, 2018, ongoing, with statutory interest paid on Claimant's past-due wage loss benefits.  *Id.*, ¶¶ 7-8.  They

---

[2] Counsel for Employer also represents its workers' compensation insurer, but not Williams individually.  C.R., Item No. 19, Williams dep, at 5, 24.

[3] Employer initially denied liability for Claimant's injuries through issuance of a notice of compensation denial (NCD) filed on March 28, 2018.  C.R., Item No. 24.  In an answer to Claimant's claim petition, Employer reasserted that it was not liable for Claimant's injuries, as they were not sustained in the course and scope of his employment.  *Id.*, Item No. 4.

agreed that Claimant earned an average weekly wage (AWW) of $278.87, which corresponded to a $250.98 weekly wage loss benefit. *Id.*, ¶ 12. In the event Claimant succeeded on the claim petition, Employer would reimburse Claimant for $1,644.55 in litigation costs. *Id.*, ¶ 11.

The parties reserved all rights under the Act to file additional petitions regarding the nature and extent of Claimant's injuries and disability, including the necessity of Claimant's medical treatment, or seeking to amend the description of Claimant's injuries or the amount of his AWW. *Id.*, ¶¶ 9, 12-14, 17.

Claimant testified at a July 9, 2018 deposition that Walter Williams (Walter), Williams's son, picked Claimant up from his house in Warminster, Pennsylvania, at approximately 3:30 a.m., to drive him to the New Jersey Job Site in one of Employer's trucks. C.R., Item No. 15, Claimant dep. at 9-11. They worked for six or seven hours before driving back to Pennsylvania in Employer's truck. *Id.* at 14. Claimant recalled that Walter was stopped by a police officer on the Atlantic City Expressway in New Jersey and cited for having an obstructed rearview mirror. *Id.* at 15. The MVA occurred a few minutes after Walter and Claimant resumed their drive home. *Id.* at 16. Claimant "woke up in the hospital[,]" and he could not remember any details from the MVA. *Id.* at 16-17.

Claimant acknowledged that he did not have a written employment contract with Employer. *Id.* at 40. Claimant agreed that he did not personally drive an Employer-owned vehicle, and that he was not promised a ride to work. *Id.* at 43, 45. Employer paid Claimant a percentage of the amount it received for each job, which Claimant received by check or cash. *Id.* at 44-45, 47.

Walter testified on July 19, 2018,[4] that, at Williams's direction, he picked up Claimant at his home on the morning of March 5, 2018, and drove to the New Jersey Job Site in Employer's truck. C.R., Item No. 16, Notes of Testimony (N.T.), 7/19/18, at 18. Walter stated that he and Claimant worked "[s]ix or seven hours[,]" under Williams's supervision. *Id.* at 20. When Walter and Claimant finished their work for the day, Williams instructed Walter to drive Claimant home in Employer's truck. *Id.* at 19. Walter and Claimant left the New Jersey Job Site between 1:00-1:30 p.m. *Id.* at 21. Walter confirmed he received a citation for having an obstructed rearview mirror. *Id.* at 52-53. The MVA occurred shortly thereafter, but Walter could not recall the circumstances of the accident beyond "someone pulling [him] up a hill" afterwards and a helicopter flight to the hospital. *Id.* at 22, 24-25.

Walter advised that he worked at a different job site in New Jersey on March 4, 2018, but that he drove to Pennsylvania at Williams's direction to pick up Claimant because they needed additional help for the New Jersey Job Site. *Id.* at 38-39, 70. Walter expected to complete the job on March 6, 2018. *Id.* at 55. On days that Claimant worked for Employer, Walter typically picked Claimant up at his home in one of Employer's trucks before driving to Employer's job site. *Id.* at 46. Williams did not drive anyone else to Employer's job sites and he did not operate Employer's vehicles outside of work. *Id.* at 48.

Williams testified at an April 30, 2019 deposition that Employer operates as a subcontractor for pool companies.[5] C.R., Item No. 19, Williams dep. at 11. He

---

[4] Walter also filed a claim petition seeking benefits under the Act. C.R., Item No. 12 at 6. Although Walter testified live before a different WCJ, his testimony was entered without objection in Claimant's proceedings. *Id.*

[5] Williams's deposition was taken as part of the proceedings for Walter's claim petition, and he testified on Walter's behalf in that matter. Claimant's counsel was also present for Williams's deposition, which was submitted as an exhibit in the instant matter. C.R., Item No. 19.

advised that Employer's trucks are parked at his house when not in use. *Id.* at 8. Williams' wife is Employer's administrative assistant, and she maintains Employer's records at their home. *Id.* at 9-10. Williams testified that he directed Walter to pick up Claimant from his home on March 5, 2018, and drive him in one of Employer's trucks to the New Jersey Job Site. *Id.* at 15-16. When they completed work for the day, Williams instructed Walter to drive Claimant home to Pennsylvania. *Id.* at 17. Williams expected to complete the job the next day. *Id.* at 30.

Williams stated that Claimant's pay for the work he performed on March 5, 2018, included additional pay for the drive to and from the New Jersey Job Site. *Id.* at 23. He advised that employees were regularly paid for their travel time, depending on the location, or "zone[,]" of the job site. *Id.* at 23-25. These zones, and the amount of additional compensation paid, related to the number of miles between the job site and Williams's home. *Id.* at 25. Employer did not pay for travel to a job site in "zone 1"; however, employees would receive travel pay for "anything over zone 1[.]" *Id.* at 45. Williams stated that the New Jersey Job Site would have been located in "zone 4 or zone 5." *Id.* at 46. Employees did not receive a separate check for travel pay; rather, it was included with their regular pay and Williams stated that it was possible his employees did not realize they received extra pay for travel. *Id.* at 41-42.

Williams stated that Claimant "absolutely" worked for Employer on March 5, 2018, and that he directed Walter to drive Claimant from his home to the New Jersey Job Site in an Employer-owned vehicle. *Id.* at 40. Williams further directed that Walter drive Claimant home in a "company truck" at the end of the workday. *Id.*

Williams also agreed that Claimant was in the course and scope of his employment for Employer when the March 5, 2018 MVA occurred. *Id.* at 41.

In an April 23, 2020 decision, the WCJ credited the "entire testimony" of Claimant and Williams. C.R., Item No. 5, WCJ Decision, Findings of Fact (F.F.) Nos. 10-11. The WCJ also credited Walter's testimony that he picked up Claimant on the morning of March 5, 2018, and drove Claimant to the New Jersey Job Site, and that the MVA occurred as Walter drove Claimant home at the end of the workday. F.F. No. 9.

Despite crediting Williams's testimony that Claimant received "zone pay," which covered Claimant's travel time, the WCJ noted that Claimant failed to present evidence to support his receipt of such pay. F.F. No. 11. Moreover, the WCJ found that Claimant had no contract, written or oral, that promised him transportation to and from work. *Id.* The WCJ found that Claimant had a fixed place of employment on the date of the injury. *Id.* The New Jersey Job Site was a two-day job and Claimant did not visit multiple sites throughout the day. *Id.* As such, the WCJ found that Claimant was not on a special assignment for Employer but was "simply being driven home after the [workday]." *Id.* Because Claimant was not in the course of employment at the time the March 5, 2018 MVA occurred, his injuries were not compensable under the Act. F.F. No. 12. Accordingly, the WCJ denied and dismissed the claim petition. WCJ Decision at 8. Claimant appealed to the Board, which affirmed. C.R., Item No. 8, Board op. at 11. This appeal followed.

6

## II. Issue

On appeal,[6] Claimant argues that his injuries from the March 5, 2018 MVA are compensable under the Act because the record demonstrates that Claimant's "oral employment contract" included transportation to and from job sites, Claimant had no fixed place of employment, and Claimant was on a special mission for, and advancing the business of, Employer when the MVA occurred.

## III.   Discussion

Section 301(a) of the Act provides that an employer is liable for compensation to an employee for injuries sustained "in the course of his employment."  77 P.S. § 431.  An injury arising in the course of employment, as defined in Section 301(c) of the Act, includes an injury sustained while an employee is "actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere[.]"  77 P.S. § 411(1).  In this circumstance, a claimant must show that he was acting for his employer's benefit and convenience and not simply commuting to or from his place of employment.  *Simko v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.–Edgar Thomson Works)*, 101 A.3d 1239, 1242 (Pa. Cmwlth. 2014).   Instantly, Claimant was not injured while on Employer's premises. Therefore, he must have been furthering Employer's business and affairs at the time of the March 5, 2018 MVA for the accident to arise in the course of his employment.

Whether an employee sustained an injury in the course and scope of employment is a question of law that is based on the findings of fact.  *Jamison v.*

---

[6] This Court's standard of review of an agency decision is limited to determining whether a constitutional violation or error of law has been committed, or whether the findings of fact are supported by substantial evidence. *Myers v. Workers' Comp. Appeal Bd. (Univ. of Pa. & Alexis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).  Whether an employee is acting within the course and scope of employment at the time of injury is a question of law that is subject to *de novo* review. *Wachs v. Workers' Comp. Appeal Bd. (Am. Off. Sys.)*, 884 A.2d 858, 862 (Pa. 2005).

7

*Workers' Comp. Appeal Bd. (Gallagher Home Health Servs.)*, 955 A.2d 494, 498 (Pa. Cmwlth. 2008). Given the humanitarian purpose of the Act, we must liberally construe the phrase "course of employment[,]" which our courts have interpreted in one of two ways, depending on whether the employee is a stationary or traveling employee. *Rana v. Workers' Comp. Appeal Bd. (Asha Corp.)*, 170 A.3d 1279, 1284 (Pa. Cmwlth. 2017). The "scope and course of employment" is broader for traveling employees and includes driving to any appointment for the employer. *Jamison*, 955 A.2d at 498. A determination as to whether an employee is a traveling employee is made on a case-by-case basis and based on whether the employee's job duties include travel, whether the employee worked on his employer's premises, or whether he had no fixed place of work. *Id.* at 498-99.

Otherwise, under what is commonly referred to as the "going and coming rule," injuries sustained by an employee while traveling to and from his place of work do not occur while in the course of employment and are not compensable under the Act. *Rana*, 170 A.3d at 1283. An exception to the rule applies where: (1) an employee's contract includes transportation to and from work; (2) the employee has no fixed place of work; (3) the employee is on a special assignment for his employer; or (4) special circumstances are such that the employee is furthering the business of his employer. *Id.* An employee with no fixed place of work is a traveling employee. *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Sols., Inc.)*, 104 A.3d 68, 71 (Pa. Cmwlth. 2014).

Claimant argues that all four exceptions to the "going and coming rule" apply in the instant matter. More specifically, Claimant contends that his employment agreement included travel provided by Employer, and, because Claimant only worked when needed, he had no fixed place of employment. Claimant also contends

8

that he was on a special mission for Employer on March 5, 2018, because Claimant was not one of the employees originally selected to work at the New Jersey Job Site. Rather, Employer needed an additional employee for a single day's work. Accordingly, Walter picked up Claimant at his house in Pennsylvania on March 5, 2018, and drove him to the New Jersey Job Site. At Williams's direction, Walter drove Claimant home in Employer's work truck when the workday ended, during which Claimant was injured in the MVA. Claimant maintains that these facts also support a conclusion that Claimant was furthering Employer's interests when the March 5, 2018 MVA occurred.

Employer responds that the circumstances of the March 5, 2018 MVA do not fit any of the exceptions to the "going and coming rule." Employer br. at 20. First, Employer argues that Claimant failed to demonstrate the existence of any oral or written employment contract, much less one that promised him transportation to and from work. Claimant also failed to demonstrate he was a traveling employee, and the record demonstrates that Claimant only worked one job at a time. As a result, Claimant had a fixed place of work. Employer also contends that Claimant's work at the New Jersey Job Site was nothing more than the performance of his regular job duties, and, therefore, he was not on a special assignment for Employer when the MVA occurred. Finally, Claimant failed to demonstrate that he was acting for Employer's benefit and convenience on March 5, 2018, and not simply commuting home after work.

The employment contract exception to the "going and coming rule" requires that a claimant produce a "contract or unequivocal testimony" that a provision for transportation existed, and a reviewing court must look at the totality of the circumstances when determining whether an employment contract, "expressly or

9

impliedly[,]" provided for transportation to and from work. *Wachs*, 884 A.2d at 862. The court may consider an oral agreement when making this determination. *Unity Auto Parts, Inc. v. Workmen's Comp. Appeal Bd. (Bigley)*, 610 A.2d 1071, 1075 (Pa. Cmwlth. 1991). To satisfy the employment contract exception to the "going and coming rule," a claimant must prove that any travel allowance paid by an employer is "**related to the actual expense and time involved in the claimant's commute**[,]" and he must prove that his employer "**provided or controlled the means of his commute**." *Leisure Line v. Workers' Comp. Appeal Bd. (Walker)*, 986 A.2d 901, 907 (Pa. Cmwlth. 2007) (emphasis added). Where a travel allowance is not directly related to the expense or distance of an employee's commute, and where the employer does not provide or control the means of transportation used, the employment contract cannot be deemed to include transportation to or from work. *Williams v. Workers' Comp. Appeal Bd. (Matco Elec. Co., Inc.)*, 721 A.2d 1140, 1144 (Pa. Cmwlth. 1998). The fact that a claimant is injured while traveling home in an employer's vehicle does not automatically support a conclusion that the injury was sustained in the course of employment. *Unity Auto Parts, Inc.*, 610 A.2d at 1075.

In affirming the WCJ's denial and dismissal of Claimant's claim petition, the Board relied on *Kush v. Workers' Compensation Appeal Board (Power Contracting Company)*, 186 A.3d 1047, 1052 (Pa. Cmwlth. 2018), in which this Court relevantly held that an electrician's employment contract did not provide for transportation. The claimant in that matter, James Kush (Kush), worked as an electrician for two employers, Power Contracting Company (Power) and Vantage Corporation (Vantage). *Id.* at 1049. Vantage provided Kush with a company vehicle that Kush used to drive to job sites for both Power and Vantage. *Id.* Kush was not

10

compensated for his travel time, unless he picked up equipment on the way to a job, or he traveled between his employers' respective job sites. *Id.* at 1050. After Kush sustained injuries in an MVA that occurred during his commute to Power's job site, he filed a claim petition seeking benefits under the Act. *Id.* at 1048. A WCJ dismissed the claim petition after finding that none of the exceptions to the "going and coming rule" applied and that Kush sustained his injuries commuting to a "fixed job location." *Id.* at 1050. The Board affirmed, as did this Court. *Id.* at 1050, 1053. Specific to the employment contract exception, we noted that the relevant issue was whether Power, not Vantage, "provided or controlled the means of [Kush's] commute." *Id.* at 1052. In the absence of such evidence, we could not conclude that Power had control over the means of Kush's commute to work. *Id.* Moreover, while Kush received compensation for his travel between jobs for Power and Vantage, he was not paid for his commute home at the end of a workday. *Id.* at 1053.

*Kush* is readily distinguishable from the instant matter because, at the time Kush drove to Power's work site, he was not driving one of Power's vehicles. Furthermore, unless Kush was picking up equipment for one of his employers or traveling between their respective job sites, Kush was not compensated for his travel time.

Instantly, although Claimant acknowledged that he did not have a written employment contract with Employer, that fact is not dispositive, as we are obligated to review the totality of the circumstances in determining whether the employment contract exception applies. Employer has not challenged Claimant's testimony that he worked for Employer as a seasonal employee for approximately four years.

Claimant was unquestionably in an Employer-owned vehicle when the March 5, 2018 MVA occurred, and Williams testified that his employees received extra

11

compensation for travel to any job site located outside zone 1. Based on Williams's testimony that the New Jersey Job Site was located in "zone 4 or zone 5," we may fairly conclude that Employer paid its employees extra compensation for that particular job. Williams dep. at 46. Indeed, Williams unequivocally testified that Claimant's pay for the work he performed on March 5, 2018, included the additional compensation for the drive to and from the New Jersey Job Site. *Id.* at 23. The WCJ credited Williams's testimony, without exception. As a result, the WCJ's subsequent finding that Claimant failed to present evidence to support his receipt of travel compensation is unsupported by the record and the WCJ's own credibility determination. Regarding the lack of documentary evidence to support Claimant's receipt of travel compensation, Williams's credited testimony demonstrates that Employer did not pay its employees separately for their travel compensation. Rather, they received a single check. Williams's acknowledgement that some employees might not realize they received travel compensation does not negate the existence of such compensation.

Our holding in *Leisure Line* requires that Claimant prove any travel allowance paid by Employer be related to the "actual expense and time" involved in Claimant's commute. *Leisure Line*, 986 A.2d at 907. Claimant demonstrated this through Williams's testimony that employees received travel compensation relating to the zone in which Employer's job site was located. These zones were based on the distance in miles from Williams's home. Claimant also had to prove that Employer "provided or controlled the means of his commute." *Id.* This element is satisfied by the credited and uncontroverted testimony of Walter and Williams that Employer provided the means for Claimant's commute when Williams directed Walter to pick

12

Claimant up at his home and drive him to the New Jersey Job Site in Employer's truck.

## IV.   Conclusion

Based on the above, and the requirement that we liberally construe the phrase "course of employment" to effectuate the humanitarian purpose of the Act, we conclude that the employment contract exception to the "going and coming rule" applies to Claimant's circumstances, and the WCJ erred in finding that Claimant's injuries from the March 5, 2018 MVA were not compensable under the Act. Accordingly, we reverse the Board's May 6, 2021 order and remand this matter to the Board for further remand to the WCJ.[7]   Upon remand, the WCJ shall make the findings of fact and conclusions of law necessary to effectuate the agreement of the parties as set forth in the Joint Stipulation.

_____
ELLEN CEISLER, Judge

---

[7] Because we have concluded that Claimant's injuries are compensable under the employment contract exception to the "going and coming rule," we need not address the remaining exceptions to that rule.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Bark, :
                  Petitioner :
  :
      v. : No. 540 C.D. 2021
  :
Sooner Steel, LLC (Workers' :
Compensation Appeal Board), :
                Respondent :

# **O R D E R**

AND NOW, this 21st day of March, 2022, the May 6, 2021 order of the Workers' Compensation Appeal Board (Board) is hereby REVERSED, and this matter is REMANDED to the Board for further remand to a workers' compensation judge, who shall make findings of fact and conclusions of law consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
ELLEN CEISLER, Judge