IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Bolds,                          :
                  Petitioner            :
                                        :
            v.                          :      No. 488 C.D. 2024
                                        :      Submitted:  December 9, 2024
City of Philadelphia (Workers'          :
Compensation Appeal Board),             :
                  Respondent            :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                        FILED:  February 25, 2025

William Bolds (Claimant) petitions for this Court's review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied his petition to reinstate compensation benefits and his penalty petition. In so doing, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that the payments to Claimant by the City of Philadelphia (Employer) were not made in lieu of workers' compensation and, thus, could be discontinued without implicating the Workers' Compensation Act (Act).[1] Upon review, we affirm.

## Background

On April 13, 2022, Claimant filed reinstatement and penalty petitions. Each petition alleged that Employer "unilaterally terminated benefits in January 2022 after accepting the claim for COVID-19 with the payment of wages in lieu of benefits as a matter of law." Certified Record (C.R.), Items 2-3, at 1.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Claimant testified that on May 24, 2020, while working as a police officer for Employer, he was diagnosed with COVID-19. At the time, he told his supervisor that he believed he contracted the virus at work. Claimant Dep. at 16; Reproduced Record at 180a (R.R. ___). Employer designated Claimant's time off work, beginning on March 19, 2020, as "E-Time," or "excused time," and paid him full salary without depleting his sick or vacation time. Claimant Dep. at 27; R.R. 191a. The E-Time salary payments ended on March 5, 2022, and he began using accrued sick and vacation time. Claimant has not returned to work because he continues to suffer cognitive problems, memory issues, neurologic issues, asthma, and neuropathy, all of which began with his diagnosis of COVID-19.

On January 31, 2022, Employer issued a notice of workers' compensation denial (NCD) denying liability for Claimant's alleged March 24, 2020, lung injury caused by COVID-19. The NCD acknowledged that Claimant gave notice of the alleged COVID-19 diagnosis but denied that his disease was work related. R.R. 251a. Claimant asserts that the NCD was not timely under Section 406.1(a) of the Act, 77 P.S. §717.1(a),[2] because it was not filed within 21 days of Claimant's oral notice to his supervisor that he believed his COVID-19 was work related.

Employer presented the testimony of Barry Scott (Scott), Employer's deputy finance director for the department of risk management, which administers employee disability programs. Scott testified that employees are required to complete a COPA-II[3] form when reporting a work-related injury. Supervisors informed of a possible work injury direct the employee to fill out this form. Scott

---

[2] Added by the Act of February 8, 1972, P.L. 25.

[3] A "COPA-II" form is the City's accident, injury, and illness form used to report work injuries. Claimant Brief at 10, n.1. It is not a required form under the Act.

testified that E-Time is not intended for work-related injuries; rather, it allows employees to continue to receive their salary when they cannot work "for whatever reason." Scott Dep. at 12-13; R.R. 5a. Scott testified that E-Time was developed in response to the COVID-19 pandemic so that employees "who succumbed to this condition were not . . . financially penalized by the condition." Scott Dep. at 13; R.R. 5a.

Scott testified that an employee who contracted COVID-19 would have been placed on the employee disability program or the injured-on-duty (IOD) program. In January 2022, Employer's risk management department learned that there were police officers being paid under the E-Time designation but had neither completed COPA-II forms nor requested IOD benefits. The department advised these officers, by letter, that their E-Time status would end and that the 60-day payment of benefits under Act 17[4] would begin. After the 60 days of Act 17 benefits, employees would be paid through sick or vacation time if they had not returned to work.

Employer also presented the deposition testimony of Lieutenant Donald Lowenthal (Lowenthal), infection control officer for Employer's police department.

---

[4] Act of April 29, 2020, P.L. 118, No. 17. It provides, in relevant part, as follows:

> **(a) General rule.--**A person covered under section 1(a) of the act of June 28, 1935 (P.L. 477, No. 193), referred to as the Enforcement Officer Disability Benefits Law, who contracts or is diagnosed with coronavirus disease 2019 (COVID-19), as identified in the proclamation of disaster emergency issued by the Governor on March 6, 2020, published at 50 Pa.B. 1644 (March 21, 2020), or is subject to quarantine resulting from exposure to COVID-19, and by reason thereof is temporarily incapacitated from performing his duties, shall be compensated in accordance with section 1(a) of the Enforcement Officer Disability Benefits Law.
>
> **(b) Limitation.--**A benefit received under subsection (a) shall be limited to 60 days for each incident.

35 Pa. C.S. §57A02.

Lowenthal testified that officers not working due to COVID-19 were recorded in the daily attendance record system as out on E-Time, irrespective of whether the illness was work related. In July 2022, a guideline was adopted that provided, *inter alia*, that where an employee claimed to have contracted COVID-19 at work, the supervisor was to complete a COPA-II on behalf of that employee.

The WCJ credited the testimony of Scott and Lowenthal. She also credited Claimant's testimony that he contracted COVID-19 for which he was hospitalized. She did not make an express credibility determination on Claimant's testimony that he told his supervisor that his COVID-19 might be work related. Instead, the WCJ found that this "testimony is not necessarily relevant to the issue before this Judge on the Reinstatement and Penalty Petitions." WCJ Decision at 9, Finding of Fact No. 8. The WCJ noted that this testimony would be "more on point and persuasive in the instance of a Claim Petition." *Id.*

The WCJ found that Employer's payments made to an employee under the E-Time designation did not constitute an acknowledgement the employee had contracted COVID-19 at work. Accordingly, Employer's payments to Claimant following his COVID-19 diagnosis did not demonstrate Employer's acceptance that Claimant's COVID-19 was a work-related injury. The WCJ rejected Claimant's assertion that he gave timely notice to Employer of his alleged work injury. She reasoned, as follows:

> Although Claimant argues that the date of notice listed in the [NCD] shows the notice was provided, this Judge does not find this to be a persuasive argument that the injury was reported as work-related at that time. *That is the date that Claimant reported his diagnosis, at the very start of the pandemic, when employers worldwide were trying to figure out the best way to handle the emerging pandemic*. To find that [] Employer intended to accept these numerous cases as work injuries would be penalizing

4

Employer for providing leave for those diagnosed with [COVID-19] during a pandemic.

WCJ Decision at 9-10, Finding of Fact No. 11 (emphasis added).

The Board affirmed the WCJ. It acknowledged that an employer who makes payments to the employee in lieu of compensation and fails to file an NCD is estopped from denying compensability of the claim. *See Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing)*, 669 A.2d 1023, 1026-27 (Pa. Cmwlth. 1995). However, the Board agreed with the WCJ's finding that the payments to Claimant designated as E-Time did not demonstrate Employer's acceptance of Claimant's illness as work related. Scott's credited testimony established that E-Time was intended for employees who cannot work for any reason. "[T]he payment of E-Time arguably constituted payments paid pursuant to an emergency plan for *non-occupational injury or illness* categorized as non-workers' compensation benefits." Board Adjudication at 9, n.6 (emphasis in original). In sum, the Board held that Claimant did not receive these payments in lieu of workers' compensation. *See* Section 315 of the Act, 77 P.S. §602.

The Board rejected Claimant's argument that he gave timely notice of his alleged work injury. Although Claimant testified that he told his supervisor that he believed he contracted COVID-19 at work, he did not fill out the COPA-II form to report the injury. He "did not ask to change his status from E-Time to IOD benefits" until he filed his reinstatement petition in 2022. Board Adjudication at 10. "Claimant acknowledged that he had previously received IOD benefits" and had previously filled out an injury or accident report or the COPA-II form. *Id*. In short, Claimant knew how to give timely notice to Employer of an alleged work injury.

Claimant petitioned for this Court's review.

## Appeal

On appeal,[5] Claimant raises one issue.[6] He argues that the Board erred in denying his reinstatement petition. Claimant contends that his uncontradicted testimony established that he told his supervisor that he contracted COVID-19 at work. The WCJ did not discredit that testimony but, rather, found it irrelevant to the reinstatement and penalty petitions. Claimant argues that his statement to his supervisor required Employer to investigate the claim and issue the NCD within 21 days, as set forth in Section 406.1(a) of the Act, 77 P.S. §717.1(a). Instead, Employer paid Claimant his regular salary from March 24, 2020, through March 5, 2022. When the NCD was issued on January 31, 2022, it recited a notice date of March 24, 2020, suggesting Employer's acknowledgement that the injury was work related. Claimant contends that Employer's payment of E-Time benefits constituted an admission of liability under the Act.

---

[5] This Court's review of a workers' compensation adjudication determines whether an error of law was committed, whether constitutional rights have been violated, or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

[6] Claimant raises the following issues in the Statement of Questions Involved, which we combine into one for clarity:

1. Whether the Board and WCJ committed errors of law when denying [Claimant] the reinstatement of benefits by misapplying pertinent authority that compels the reinstatement of benefits after wages were paid in lieu of compensation and [Employer] failed to file a timely [NCD]?
2. Whether the Board and WCJ committed errors of law by departing from the humanitarian purpose of the Act?
3. Whether the Board and WCJ committed errors of law by concluding that [Employer] did not violate the Workers' Compensation Act?

Claimant Brief at 5.

Claimant maintains that Scott's testimony did not establish Employer's intent for the payment of E-Time to employees with a COVID-19-related absence. Scott was not an employee or supervisor in Employer's police department. Scott testified that he learned, for the first time, in January of 2022, that there were several officers out with long-haul COVID-19 who were receiving E-Time benefits. This testimony, Claimant argues, did not establish Employer's intent with respect to E-Time.

Claimant contends that Employer's failure to use Act 17 immediately after it became law shows that the intent of E-Time benefits was payment in lieu of compensation. The lack of a COPA-II form is irrelevant because there was no official requirement that a supervisor use the COPA-II form until the guideline was adopted in July of 2022.

Claimant directs the Court to *Findlay Township v. Workers' Compensation Appeal Board (Phillis)*, 996 A.2d 1111 (Pa. Cmwlth. 2010). In *Findlay Township*, this Court held that payments would not be considered wages in lieu of compensation because the employer had issued two timely denials; the payments were not directly made to the claimant; and the payments were not made in consistent or regular amounts or in a regular payment cycle. Here, Employer did not issue a timely NCD; the payments were directly made to Claimant; and the payments were made in consistent and regular amounts and in a regular payment cycle. Claimant argues that these dramatic factual differences support the conclusion that Employer's payments to Claimant were in lieu of compensation.

In response, Employer argues that Claimant failed to prove the existence of a work injury. He provided no evidence that he tested positive for COVID-19; that he was disabled by the disease; and that he needed to stay out of

7

work for years while receiving his full salary due to symptoms related to a COVID-19 infection. The relevant inquiry is "the *intent* of the payment, not the receipt thereof[.]" *Kelly*, 669 A.2d at 1026 (emphasis in original). In *Mosgo v. Workmens' Compensation Appeal Board (Tri-Area Beverage, Inc.)*, 480 A.2d 1285 (Pa. Cmwlth. 1984), it was undisputed that the payments were intended to compensate the claimants for their work injuries for the period they were paid. By contrast, here, Employer disputed that it received timely notice of a work injury and disputed that any E-Time payments were intended as payments in lieu of workers' compensation. The WCJ found in favor of Employer; her credibility determinations and findings of fact cannot be disturbed.

We begin our review with Section 406.1(a) of the Act, which states as follows:

> *The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due* either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407[7] or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. *The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability.* Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum. Any payment of compensation

---

[7] Section 407 of the Act provides that an employer may commence payment of compensation benefits pursuant to the agreement of both parties. However,

> [w]here payment of compensation is commenced without an agreement, the employer or insurer shall simultaneously give notice of compensation payable to the employe or his dependent, . . . identifying such payments as compensation under the act and shall forthwith furnish a copy or copies to the department as required by rules and regulations.

77 P.S. §731.

prior or subsequent to an agreement or notice of compensation payable or a notice of temporary compensation payable or greater in amount than provided therein shall, to the extent of the amount of such payment or payments, discharge the liability of the employer with respect to such case.

77 P.S. §717.1(a) (emphasis added).

Section 315 of the Act,[8] 77 P.S. §602, further provides that "all claims for compensation shall be forever barred, unless, within three years after the injury," "payments of compensation have been made" whereupon the said limitations shall not take effect until the expiration of three years from the time of making the most recent payment prior to the date of filing such petition. The term "payments of compensation" means "*any* voluntary or informal compensation, apart from the Act, paid *with the intent* to compensate for a work-related injury." *NUS Corporation v. Workmen's Compensation Appeal Board (Garrison)*, 547 A.2d 806, 809 (Pa. Cmwlth. 1988) (emphasis in original). As we explained in *Garrison*, "[t]he reason for the rule is that by such payments, the employer recognizes that the claimant is suffering from a work-related injury and upon cessation of payments, the parties are returned to their status quo allowing the claimant the full period of time to assert his

---

[8] It states, in relevant part, as follows:

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. . . . Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: *Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations*.

Section 315 of the Act, 77 P.S. §602 (emphasis added).

9

claim." *Id.* at 808 n.1. "Such payments are deemed to have been made in lieu of compensation, just as if they had been formal payments rendered under the Act." *Id.* On the other hand,

> any payment made under an established plan or policy of insurance for the *payment of benefits on account of non-occupational illness or injury* and which payment is identified as not being workmen's compensation *shall not be considered to be payment in lieu of workmen's compensation*, and such payment shall not toll the running of the Statute of Limitations.

Section 315 of the Act, 77 P.S. §602 (emphasis added).

This Court has reviewed the meaning of "payment in lieu of worker's [sic] compensation" in several cases. In *Mosgo*, 480 A.2d at 1286, the employer made compensation payments to an injured employee but reserved the right to discontinue them upon completion of its investigation. The employer did not file a NCD within 21 days of notice of the employee's disability but continued to pay weekly benefits for five weeks. After receiving a medical report stating that the employee's injury was not work related, the employer then filed an NCD. The employee challenged the employer's unilateral suspension of benefits as a violation of the Act. The Board affirmed the referee's dismissal of the employee's petition.

This Court reversed the Board. We held that the employer's reservation of the right to deny its liability was null and void under the Act. Accordingly, the employer was therefore deemed to have made the compensation payment without reservation. The Court reasoned:

> [S]ince [the employer] may not profit by [its] delinquency in failing to carry out the mandates of Sections 406.1 and 407, [it is] estopped to disavow [its] acceptance of liability and must, therefore, be held bound by agreement to pay compensation with the same legal effect as would apply if [it] had formally complied with the Act and the applicable Rules and Regulations of the

Department; and, accordingly, the referee and the Board erred in placing the burden of proof on the [employee]; rather the burden was and is on the [employer].

*Mosgo*, 480 A.2d at 1289.[9]

In *Kelly*, 669 A.2d at 1024, the claimant was assaulted and seriously injured. The employer, suspecting that another employee had committed the assault, paid the claimant's mortgage of over $500 for 6 months and paid his wife $300 a week. When the employer stopped these payments, the claimant filed a claim petition, which was granted. This Court held that the employer had effectively admitted liability under the Act with its voluntary payments to the claimant and his wife "*with the intent to compensate* [*the c*]*laimant for a work-related injury*," as the WCJ so found. *Id.* at 1026 (emphasis added). We explained that when examining whether such payments constitute wages in lieu of compensation, it is "the *intent* of the payment, not the receipt thereof" that is relevant. *Id.* (emphasis in original). *See also Findlay Township*, 996 A.2d at 1118 (holding that the critical inquiry is the insurer's intent for the payments). The claimant bears the burden of proving that the employer intended the payments to be in lieu of compensation and, therefore, has made an admission of liability that estops any future denial thereof. *Garrison*, 547 A.2d at 809.

*Mosgo* and *Kelly* are distinguishable from the case at bar. In *Mosgo*, the employer admitted that the five weeks of payments were for compensation. This Court held that because the employer's reservation of the right to file an untimely NCD was ineffective, the employer was estopped from disavowing its acceptance of

---

[9] Notably, the *Mosgo* decision pre-dates the 1993 amendment to Section 406.1 of the Act, which added subsection (d), thereby including within the Act for the first time a provision for the issuance of a notice of temporary compensation payable (NTCP) where liability is uncertain. Thus, at the time this Court decided *Mosgo*, an NTCP was not a tool available for use by employers.

liability. Likewise, in *Kelly*, the employer took responsibility for the claimant's injury and promptly started making cash payments to the claimant and his wife, which constituted payments of wages in lieu of workers' compensation indemnity benefits.

By contrast, here, Employer disputed that it ever made payments in lieu of compensation or accepted liability for Claimant's alleged work injury. Crediting Scott's and Lowenthal's testimony, the WCJ found that E-Time was intended to respond to the emerging pandemic in 2020 without regard to whether the disability was work related. That testimony established that Employer's objective was to pay all employees out of work due to COVID-19, regardless of cause, in order to protect other employees and citizens from exposure. While Claimant argues that Scott's testimony was not credible, it is the prerogative of the WCJ to determine the credibility of witnesses and the weight to be accorded evidence. *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 17-19 (Pa. Cmwlth. 2008). Such determinations are not subject to appellate review. *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084, 1087 (Pa. Cmwlth. 1999).

Claimant maintains that he notified Employer that his COVID-19 was work related; however, nothing in the record corroborated Claimant's testimony. *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004) (WCJ, as fact finder, is not required to accept even uncontradicted testimony). The NCD does not corroborate Claimant. To the contrary, the NCD reflected only that Employer had been advised of Claimant's COVID-19 diagnosis on March 24, 2020. However, the NCD expressly denied that this diagnosis was work related. R.R. 251a.

Likewise, the fact that Employer did not invoke Act 17 until 2022 does not support the inference that Employer's E-Time payments were made in lieu of compensation. The WCJ and the Board found that E-Time was not intended for work injuries but was undertaken "pursuant to an emergency plan for *non-occupational injury or illness* categorized as non-workers' compensation benefits." Board Adjudication at 9, n.6 (emphasis in original).

The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). Further, the Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. Applying these principles, we conclude that substantial evidence supports the WCJ's finding that payments made under the E-Time designation did not constitute Employer's acknowledgement that Claimant had contracted COVID-19 at work. Those E-Time benefits were paid to all employees out of work due to COVID-19, regardless of cause. *See* Section 315 of the Act, 77 P.S. §602 (payments on account of non-occupational illness shall not be considered "payment in lieu of compensation").

Because Employer did not accept liability for Claimant's reported COVID-19 diagnosis, the Board did not err in affirming the WCJ's denial of Claimant's reinstatement petition. To meet his burden of proof on his penalty petition, Claimant had to establish that Employer violated the Act or its regulations by ending his E-Time payments. *See Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282, 1288 (Pa.

13

Cmwlth. 2000). Because Claimant did not prevail on his reinstatement petition, he cannot prevail on his claim that Employer violated the Act, as asserted in his penalty petition.

## Conclusion

For all of the foregoing reasons, we affirm the Board's April 5, 2024, adjudication.


_____
MARY HANNAH LEAVITT, President Judge Emerita



Judge Dumas did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Bolds, : 
             Petitioner : 
              : 
           v. :     No. 488 C.D. 2024
              : 
City of Philadelphia (Workers' : 
Compensation Appeal Board), : 
            Respondent : 

# **O R D E R**

AND NOW, this 25th day February, 2025, the adjudication of the Workers' Compensation Appeal Board, dated April 5, 2024, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita